# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

————————————————————————x

**FAIR HEALTH, INC.,**

                    **Plaintiff,**

          - against -

**STEPHEN FOREMAN,**

                    **Defendant.**

————————————————————————x

Index No. _____

**SUMMONS**

**Plaintiff designates New York
County as place for trial**

**The basis of venue is
Plaintiff's residence**

TO:    STEPHEN FOREMAN
       156 Quarry Lane
       Franklin, Pennsylvania 16323


       **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within twenty (20) days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: March 21, 2016

                              **MORAN • KARAMOUZIS LLP**


                              By: _/s/ Andrew P. Karamouzis_____
                                   Siobhan E. Moran
                                   Andrew P. Karamouzis

                              265 Sunrise Highway, Suite 61
                              Rockville Centre, New York 11570
                              (516) 678-6660
                              smoran@mka-law.com
                              akaramouzis@mka-law.com

                              Attorneys for Plaintiff
                              FAIR Health, Inc.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

——————————————————————x

**FAIR HEALTH, INC.,**                          Index No. _____

                **Plaintiff,**

      - against -

**STEPHEN FOREMAN,**                          <u>**COMPLAINT**</u>

            **Defendant.**

——————————————————————x

      Plaintiff FAIR Health, Inc. ("FAIR Health"), by its attorneys, Moran • Karamouzis, LLP, as and for its Complaint in this action against Defendant Stephen Foreman ("Defendant" or "Foreman"), hereby states and alleges, upon knowledge as to all facts concerning itself, and upon information and belief as to all others, as follows:

<u>**INTRODUCTION**</u>

      1.    This is an action for damages, declaratory and injunctive relief against Defendant, a former consultant to FAIR Health, Syracuse University and the State of New York, based upon his breach of a Confidentiality Agreement, dated as of February 1, 2010, between FAIR Health and Defendant (the "Confidentiality Agreement"). *A true and correct copy of the Confidentiality Agreement is attached hereto as Exhibit "A" and made part hereof.*

      2.    Defendant, using the confidential and proprietary information that he garnered while working for FAIR Health, and in direct violation of his contractual obligations to FAIR Health under the Confidentiality Agreement, is engaged as a "consulting expert" providing information against FAIR Health in a putative class action lawsuit, entitled *Folweiler Chiropractic P.S. v. FAIR Health, Inc.,* No. 15-2-13107-9 SEA, which is pending in the Superior Court for the State of Washington, King County (the "*Folweiler* Action").

## THE PARTIES

3.      Plaintiff FAIR Health is a small, independent not-for-profit New York corporation, qualifying as a public charity under section 501(c) (3) of the Internal Revenue Code, with its principal offices located at 530 Fifth Avenue, New York, New York 10036.

4.      As a tax-exempt charitable organization, FAIR Health's mission is to bring transparency to healthcare costs and health insurance information through comprehensive data products, free consumer resources and support of health services research.

5.      Defendant Foreman is an individual residing in the State of Pennsylvania. Foreman holds a Ph.D. in Health Administration and Health Policy and is an Associate Professor of Health Care Administration at Robert Morris University in Pittsburgh, Pennsylvania.

6.       Defendant is also an expert witness "for hire" in the area of health administration and has been retained as a "consulting expert" against FAIR Health in the *Folweiler* Action.

7.      Non-Party David Breskin ("Breskin"), of the law firm Breskin, Johnson & Townsend, is a Plaintiff's class action attorney residing in Seattle, Washington.   Breskin is lead counsel for Plaintiffs in the *Folweiler* Action against FAIR Health.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper before this Court because FAIR Health is a New York not-for-profit corporation with its principal place of business in New York, and under the terms of the Confidentiality Agreement, Defendant has expressly consented "to the exclusive jurisdiction of the State of New York, USA, without reference to its conflicts of law provisions."   *See Confidentiality Agreement, ¶ 9 (Ex. A).*

2

9.      Venue is proper in the County of New York because FAIR Health is a resident of the County of New York, and the Confidentiality Agreement so provides for venue to be located in Manhattan.  *See Confidentiality Agreement, ¶ 9 (Exhibit A).*

## FACTS APPLICABLE TO ALL CLAIMS

### A.    THE CREATION OF FAIR HEALTH

10.      FAIR Health was established in October 2009 as part of a settlement of an investigation conducted by then New York State Attorney General (and now Governor) Andrew Cuomo (the "NY OAG") (the "Settlement") into Ingenix, a wholly-owned subsidiary of UnitedHealth Group Incorporated ("Ingenix").  The NY OAG, while not proceeding to fact finding on the underlying allegations, found that "Ingenix has a conflict of interest in creating the schedules used as a basis for reimbursement by UnitedHealth" to determine reimbursements for patients who received medical services from out of network providers.

11.      As part of the Settlement, a "qualified, independent, university-level school of public health or other appropriate school in New York was to be selected to "establish and operate an independent database for academic research and as a tool for determining reimbursement rates."  A "Not-for-Profit Company, as determined by the Office of the Attorney General, will be the owner and operator of the New Database."

12.      FAIR Health was incorporated as a non-profit 501(c)(3) specifically to create, own and operate the new database, and Syracuse University was selected to manage the expert academic consortium established to provide advice on the creation of the independent database. As the New York State Attorney General explicitly detailed, the healthcare system would be better served by the creation of "a new, independent database, not controlled by an insurer, to be used for determining fair and accurate reimbursement rates."

3

13.     Thereafter, FAIR Health, in consultation with a group of academic experts at Syracuse University and other universities around the United States, together with a separate national, independent advisory board comprised of statistical and economic experts, established the new database.

14.     FAIR Health's mandate is to create and provide an independent, impartial source of data regarding the cost of healthcare procedures, to educate consumers and offer them free tools to make it easier to estimate out-of-network expenses, to disseminate such data to all participants in the health care arena to promote fair billing and reimbursement practices, and to make such data available for policymaking and academic research (the "FAIR Health Data Products").

15.     FAIR Health's Data Products became available under licenses beginning in 2011. All of FAIR Health's licenses for its Data Products specifically contain strict confidentiality provisions regarding the use and non-disclosure of the Data Products.

**B.      THE CONFIDENTIALTY AGREEMENT**

16.     Defendant Foreman, an Associate Professor of Health Care Administration at Robert Morris University, served as a consultant to FAIR Health and worked with the team of academic experts at Syracuse University on the creation of the new database.  Upon information and belief, Foreman also worked with, and advised, the NY OAG concerning its investigation of Ingenix.

17.     As part of that work, on or about February 1, 2010, Foreman signed a Confidentiality Agreement concerning his work.  Foreman agreed "to protect and preserve the confidential and/or proprietary nature of certain information and materials [of FAIR Health] that may be disclosed or made available to [Foreman] in connection with consulting services

4

provided by Foreman to FAIR Health, Syracuse University and the New York State Attorney General." *See Confidentiality Agreement (Exhibit A).*

18.     Based upon his extensive background in health administration, Defendant was retained as a "special expert" and consultant to help develop the new database.

19.     In consideration for his services, Plaintiff charged an hourly rate of $350.00 (Three Hundred Fifty Dollars) per hour.

20.     Defendant billed the sum of $33,127.87 (Thirty Three Thousand One Hundred Twenty Seven Dollars Eighty Seven Cents) for his professional services, which sum was paid to Defendant in full by FAIR Health.

21.     During the course of his work for FAIR Health, Defendant had access to, reviewed and utilized certain confidential and proprietary information relating to FAIR Health, Ingenix, the NY OAG, and Syracuse University, and engaged in extensive discussions with representatives of these entities that were covered by the Confidentiality Agreement.

22.     In recognition of the extremely sensitive, confidential and proprietary nature of the information provided to Defendant, Section 1 of the Confidentiality Agreement defines "Proprietary Information" to include, without limitation, "any and all information and material disclosed by or on behalf of [FAIR Health, Syracuse University,] Ingenix, Inc. … and/or the [New York State Attorney General] to Foreman or obtained by Foreman (whether before or after the Effective Date of this Agreement, and whether in writing, or in oral, graphic, electronic or any other form).    Furthermore, "Proprietary Information" includes without limitation any (a) trade secret, know-how, idea, invention, process, technique, algorithm, program, hardware, device, design, plan, strategy or forecast of FAIR Health, Syracuse University, Ingenix, the New York State Attorney General and their respective employees, consultants, investors, affiliates,

5

licensors, suppliers, vendors, customers, clients and other persons and entities (collectively the "Disclosing Entities").   Proprietary Information" also includes (b) technical, engineering, manufacturing, product, marketing, servicing, financial, personnel, health insurance claims and other information and materials of the Disclosing Entities as well as (c) information, statistics, analysis, opinions, conclusions, observations and/or comparisons obtained or developed through the use and/or manipulation of, or otherwise related to, the foregoing whether before or after the Effective Date of the Confidentiality Agreement including, without limitation, any of the foregoing in connection with any prior research by Foreman.  *See Confidentiality Agreement, ¶ 1 (Exhibit A).*

23.     Under Section 2 of the Confidentiality Agreement, Defendant was and is required to hold such Proprietary Information "in strict confidence" and Defendant is not permitted to "use any Proprietary Information for the benefit of [yourself] or any third party or for any purpose other than" your work for FAIR Health, Syracuse University, and the New York State Attorney General.  *See Confidentiality Agreement, ¶ 2 (Exhibit A).*

24.     Section 2 of the Confidentiality Agreement further requires that Defendant:

> [S]hall not testify in any judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental action or proceeding using Proprietary Information without first notifying [FAIR Health Inc.] and obtaining [FAIR Health Inc.'s] prior written consent.

*See Confidentiality Agreement, ¶ 2 (Exhibit A).*

25.     The Confidentiality Agreement also expressly provides that Defendant's contractual obligations to FAIR Health under Section 2 shall survive termination of the Confidentiality Agreement.  *See Confidentiality Agreement, ¶ 2 (Exhibit A)* ("The obligations of

6

this Section 2 with respect any item of Proprietary Information or with respect to any discussions or agreements between the parties shall survive termination or expiration of this Agreement.").

26.     The Proprietary Information, which forms the basis of FAIR Health's Data Products, represents valuable, confidential and proprietary trade secrets of FAIR Health that provide it with a competitive advantage in its business. FAIR Health has expended tremendous effort and resources to cultivate and develop the Proprietary Information.  Moreover, the Proprietary Information is not generally known to competitors or disclosed to the public.

**C.**     **The Folweiler Action Against FAIR Health**

27.     Folweiler Chiropractic, PS ("Folweiler"), is a chiropractic provider located in Seattle, Washington.

28.     On or about May 29, 2015, Folweiler, through its counsel, Breskin, filed the *Folweiler* Action against FAIR Health in the Superior Court of Washington, King County.

29.     Plaintiff's Complaint in the *Folweiler* Action contains allegations that:

- Before March 31, 2011, FAIR Health changed or modified the Ingenix database, and further that FAIR Health "rebranded" or renamed the changed or modified version of the Ingenix database as the "FAIR Health" database.

- FAIR Health then marketed the new database to insurers and bill auditors for use in auditing and paying health care provider bills.

- FAIR Health marketed its database as more transparent, objective, reliable and accessible than the Ingenix database previously used by bill auditors, and insurers to review and pay health care provider bills on insurance claims.

- The FAIR Health database had many of the same types of flaws, criticisms and/or limitations identified in the prior investigations conducted by the New York State Attorney General.

- Prior to March 31, 2011, FAIR Health met with representatives of the health insurance industry and/or health insurance companies that had used the Ingenix database to discuss FAIR Health's new databases and/or planned changes and/or modifications to the Ingenix database.

7

- During one or more of these meetings, representatives of the insurance industry or insurance companies stated in words or substance that insurers would not license and/or use the FAIR Health database if it significantly or substantially increased the amount of their payments to health care providers on insurance claims compared to amounts paid using the Ingenix database

- In response, FAIR Health agreed in words or substance that it would not make changes and modifications to the Ingenix database that would result in insurers having to pay substantially more in health care provider costs than compared to using the Ingenix database.

- FAIR Health knew or should have known that insurers who paid health care provider bills would use the FAIR Health database in the same manner as the Ingenix database.

30.    FAIR Health denies all of the substantive allegations in the _Folweiler_ Action and is vigorously defending against Plaintiff's claims.

31.    Discovery is presently on-going in the _Folweiler_ Action.

32.    On or about March 15, 2016, Folweiler served FAIR Health with its Response to FAIR Health's First Set of Interrogatories and Request for Production of Documents.

33.    Folweiler's response to FAIR Health's discovery demands identified Defendant Foreman as a "consulting expert" in the _Folweiler_ Action attacking the FAIR Health database

34.    Folweiler's response to FAIR Health's discovery demands also specifically identified Defendant Stephen Foreman as the source for allegations in Plaintiff's Complaint, which are based upon alleged conversations between Foreman and FAIR Health's President at or about the time Defendant was acting as a "special expert" and consultant for FAIR Health.

35.    Upon information and belief, prior to retaining Defendant, Breskin had actual and/or constructive knowledge that Defendant worked as a "special expert" and consultant to FAIR Health and that Defendant had entered into the Confidentiality Agreement with FAIR Health.

8

36.     Indeed, there is no doubt that Defendant was specifically retained as a "consulting expert" by Plaintiff in the _Folweiler_ Action because of his prior intimate working relationship with FAIR Health and Defendant's special access to, knowledge and use of the Proprietary Information.

37.     At no time did Defendant ever advise or otherwise notify FAIR Health that he was retained as a "consulting expert" against FAIR Health in the _Folweiler_ Action.  Nor did Defendant seek, much less obtain, FAIR Health's written consent to allow him to act as a consultant in a civil action brought directly against FAIR Health, challenging the very data and methodologies regarding which Defendant had acted as a consultant to FAIR Health.

38.     Defendant's knowledge and use of the Proprietary Information and engagement as a "consulting expert" in the _Folweiler_ Action, which directly and unequivocally attacks the FAIR Health database, are a direct violation of his contractual obligations under the Confidentiality Agreement.

39.     Defendant has disregarded and violated the express terms and provisions of the Confidentiality Agreement by utilizing the Proprietary Information.

40.     Defendant's wrongful conduct, as amply set forth herein, constitutes a clear violation of the Confidentiality Agreement, and has caused and continues to cause substantial harm to FAIR Health and its existing customers.

41.     The Confidentiality Agreement provides for the grant of immediate injunctive relief in the event of a violation of the agreement by Defendant.  Specifically, Section 7 of the Confidentiality Agreement, entitled "REMEDIES",  provides as follows:

> Recipient [Defendant] agrees that, due to the unique nature of the Proprietary Information, the unauthorized disclosure or use of the Proprietary Information will cause irreparable harm and significant injury to Discloser [FAIR Health], the extent of which will be difficult to

9

ascertain and for which there will be no adequate remedy at law. Accordingly, Recipient [Defendant] agrees that Discloser [FAIR Health], in addition to any other remedies, shall have the right to an immediate injunction and other equitable relief enjoining any breach or threatened breach of this Agreement, without the necessity of posting any bond or other security.

See *Confidentiality Agreement, ¶ 2 (Exhibit A).*

## CAUSES OF ACTION

### As And For A First Cause of Action
**(Preliminary Injunction and Declaratory Judgment Against Defendant Foreman)**

42.     FAIR Health repeats and realleges Paragraphs 1 through 41 as if fully set forth herein.

43.     At all relevant times, the Confidentiality Agreement between FAIR Health and Defendant was and is a valid and legally enforceable agreement.

44.     As set forth in detail above, Defendant's wrongful conduct is causing substantial and irreparable harm to FAIR Health.

45.     As a "consulting expert" in the *Folweiler* Action, Defendant has and continues to unlawfully use the Proprietary Information and is actively using the Proprietary Information against FAIR Health with intent to injure FAIR Health and its existing customers.

46.     Defendant will continue to violate the Confidentiality Agreement and continue to cause substantial and irreparable harm to FAIR Health unless Defendant is permanently restrained and enjoined.

47.     As set forth above in Section 7 of the Confidentiality Agreement expressly provides for the grant of injunctive relief in the event of violations such as those alleged herein. Specifically, Section 7 of the Confidentiality Agreement, entitled "REMEDIES," provides

10

Recipient [Defendant] agrees that, due to the unique nature of the Proprietary Information, the unauthorized disclosure or use of the Proprietary Information will cause irreparable harm and significant injury to Discloser [FAIR Health], the extent of which will be difficult to ascertain and for which there will be no adequate remedy at law. Accordingly, Recipient [Defendant] agrees that Discloser [FAIR Health], in addition to any other remedies, shall have the right to an immediate injunction and other equitable relief enjoining any breach or threatened breach of this Agreement, without the necessity of posting any bond or other security.

_See_ Confidentiality Agreement, ¶ 2 (Exhibit A).

48.    As a direct result of Defendant's wrongful conduct as set forth in detail herein, FAIR Health has suffered and continues to suffer irreparable harm for which monetary damages are inadequate.

49.    FAIR Health has no adequate remedy at law for the irreparable harm it has already suffered and that it will continue to suffer if Defendant is not permanently restrained and enjoined from violating the terms of the Confidentiality Agreement and continuing his wrongful course of conduct.

50.    As set forth in detail herein, FAIR Health has established a likelihood of success on the merits.

51.    As set forth in detail herein, Defendant is in direct violation of his Confidentiality Agreement with FAIR Health, is actively assisting in the prosecution of the _Folweiler_ Action against FAIR Health and has unclean hands.  Accordingly, the balance of the equities clearly tips in favor of FAIR Health.

52.    FAIR Health also seeks a declaratory judgment adjudging that Defendant is violation of the terms of the Confidentiality Agreement.

53.    As a direct and proximate result of Defendant's wrongful conduct, FAIR Health is entitled to the grant of a temporary restraining order, and temporary and permanent injunctive

11

relief, enjoining Defendant Foreman from violating the terms of the Confidentiality Agreement and specifically restraining, enjoining and prohibiting Defendant from: (i) using the Proprietary Information in any manner whatsoever, (ii) acting as a "consulting expert" or witness against FAIR Health, or otherwise providing any further assistance to Folweiler or its counsel, Breskin, in the *Folweiler* Action or any other action or proceeding involving similar claims, and (iii) otherwise acting as a consultant to, or retained expert on behalf of, any party or testifying in any judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental action against FAIR Health.

### As And For A Second Cause of Action
#### (Breach of Contract Against Defendant)

54.    FAIR Health repeats and realleges Paragraphs 1 through 53 as if fully set forth herein.

55.    At all relevant times, the Confidentiality Agreement between FAIR Health and Defendant was and is a valid and legally enforceable agreement.

56.    As set forth in detail above, Defendant has violated the express terms of the Confidentiality Agreement by, among other things, using the Proprietary Information against FAIR Health, with intent to injure FAIR Health and its existing customers, in his capacity as a "consulting expert" for Plaintiff in the *Folweiler* Action.

57.    As a direct and proximate result of Defendant's wrongful conduct, FAIR Health has suffered and continues to suffer substantial damages in an amount to be proven at trial, but in no event less than $1,000,000 (One Million Dollars).  Based upon Defendant's intentional, willful, wanton and malicious wrongful conduct, FAIR Health is also entitled to recover punitive damages in an amount to be proven at trial, but in no event less than $1,000,000 (One Million Dollars).

12

## As And For A Third Cause of Action
**(Breach of the Implied Covenant and Good Faith and Fair Dealing Against Defendant)**

58.     FAIR Health repeats and realleges Paragraphs 1 through 57 as if fully set forth herein.

59.     At all relevant times, the Confidentiality Agreement between FAIR Health and Defendant was and is a valid and legally enforceable agreement.

60.     The Confidentiality Agreement contains an implied covenant of good faith and fair dealing.

61.     Defendant has violated the implied covenant of good faith and fair dealing contained in the Confidentiality Agreement by, among other things, (i) acting as a "consulting expert" for Plaintiff against FAIR Health in the _Folweiler_ Action, (ii) disclosing confidential information in connection with such Action, and (iii) failing to seek FAIR Health's consent, or otherwise notify or advise FAIR Health, that he intended to become engaged as a "consulting expert" for Plaintiff against FAIR Health in the _Folweiler_ Action.

62.     As a direct and proximate result of Defendant's wrongful conduct, FAIR Health has suffered and continues to suffer substantial damages in an amount to be proven at trial, but in no event less than $1,000,000 (One Million Dollars). Based upon Defendant's intentional, willful, wanton and malicious wrongful conduct, FAIR Health is also entitled to recover punitive damages in an amount to be proven at trial, but in no event less than $1,000,000 (One Million Dollars).

## As And For A Fourth Cause of Action
**(Unfair Competition and Misappropriation of Trade Secrets Against Defendant)**

63.     FAIR Health repeats and realleges Paragraphs 1 through 62 as if fully set forth herein.

13

64.    As set forth in detail herein, Defendant knowingly and willfully misappropriated FAIR Health's Proprietary Information, without permission or right and in direct violation of the Confidentiality Agreement with FAIR Health, for his own personal and pecuniary benefit use and/or that of Plaintiff Folweiler in the _Folweiler_ Action.

65.    The Proprietary Information misappropriated by Defendant represents valuable, confidential and proprietary trade secrets of FAIR Health that provide it with a competitive advantage in its business. FAIR Health has expended tremendous effort and resources to cultivate and develop the Proprietary Information.  Moreover, the Proprietary Information is not generally known to competitors or disclosed to the public.

66.    Upon information and belief, the Proprietary Information is in the custody, control and/or possession of Defendant and is being actively disclosed and communicated to Plaintiff Folweiler for its use in connection with the prosecution of the _Folweiler_ Action against FAIR Health.

67.    As a direct and proximate result of Defendant's wrongful conduct, FAIR Health has suffered and continues to suffer substantial damages in an amount to be proven at trial, but in no event less than $1,000,000 (One Million Dollars). Based upon Defendant's intentional, willful, wanton and malicious wrongful conduct, FAIR Health is also entitled to recover punitive damages in an amount to be proven at trial, but in no event less than $1,000,000 (One Million Dollars).

### As And For A Fifth Cause of Action
**(Unjust Enrichment Against Defendant)**

68.    FAIR Health repeats and realleges paragraphs 1 through 67 as if fully set forth herein.

14

69.    Defendant has been retained and is being amply compensated for his work as a "consulting expert" in the _Folweiler_ Action.

70.    As set forth in detail above, Defendant has been unjustly enriched as a direct result of his misappropriation and unauthorized use of FAIR Health's Proprietary Information, which is the primary reason why he was retained as "consulting expert" against FAIR Health in the _Folweiler_ Action.

71.    As a direct and proximate result of Defendant's wrongful conduct, FAIR Health has suffered and continues to suffer substantial damages in an amount to be proven at trial, but in no event less than $1,000,000 (One Million Dollars). Based upon Defendant's intentional, willful, wanton and malicious wrongful conduct, FAIR Health is also entitled to recover punitive damages in an amount to be proven at trial, but in no event less than $1,000,000 (One Million Dollars).

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff FAIR Health, Inc. respectfully requests that this Court enter judgment as against Defendant Stephen Foreman as follows:

    i.    On the First Cause of Action, adjudging and declaring that Defendant is in violation of the terms of the Confidentiality Agreement at issue and declaring and granting permanent injunctive relief against Defendant restraining, enjoining and prohibiting him from: (i) using the Proprietary Information in any manner whatsoever, (ii) acting as a "consulting expert" or witness against FAIR Health, or otherwise providing any further assistance to Folweiler or its counsel, Breskin, in the _Folweiler_ Action or any other action or proceeding involving similar claims, and (iii) otherwise acting as a consultant to, or retained expert on behalf of, a party or testifying in any judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental action against FAIR Health;

    ii.    On the Second Cause of Action, adjudging that Defendant has breached the terms of the Confidentiality Agreement at issue, and as a result, FAIR Health is entitled to an award of compensatory damages

15

in an amount to be determined at trial, but in no event less than $1,000,000 (One Million Dollars), plus all costs and expenses, including reasonable attorney's fees, plus applicable pre- and post-judgment interest and costs;

iii.    On the Third Cause of Action, adjudging that Defendant has breached the implied covenant and good faith and fair dealing contained in the Confidentiality Agreement at issue, and as a result, FAIR Health is entitled to an award of compensatory damages in an amount to be determined at trial, but in no event less than $1,000,000 (One Million Dollars), plus all costs and expenses, including reasonable attorney's fees, plus applicable pre- and post-judgment interest and costs;

iv.    On the Fourth Cause of Action, adjudging that Defendant misappropriated FAIR Health's Proprietary Information and as a result, FAIR Health is entitled to an award of compensatory damages in an amount to be determined at trial, but in no event less than $1,000,000 (One Million Dollars), an award of punitive damages in an amount to be determined at trial, but in no event less than $1,000,000 (One Million Dollars), plus all costs and expenses, including reasonable attorney's fees, plus applicable pre- and post-judgment interest and costs;

v.    On the Fifth Cause of Action, adjudging that Defendant was unjustly enriched at FAIR Health's direct expense, and as a result, FAIR Health is entitled to an award of compensatory damages in an amount to be determined at trial, but in no event less than $1,000,000 (One Million Dollars), an award of punitive damages in an amount to be determined at trial, but in no event less than $1,000,000 (One Million Dollars), plus all costs and expenses, including reasonable attorney's fees, plus applicable pre- and post-judgment interest and costs; and

vi.    An Order awarding FAIR Health all such other and further relief that this Court deems just and proper.

16

Dated:  March 21, 2016                                  Respectfully submitted,
            Rockville Centre, New York


**MORAN • KARAMOUZIS LLP**


By:    /s/  Andrew P. Karamouzis
           Siobhan E. Moran
           Andrew P. Karamouzis

265 Sunrise Highway, Suite 61
Rockville Centre, New York 11570
(516) 678-6660
(516) 678-6661 (Facsimile)
smoran@mka-law.com
akaramouzis@mka-law.com

Attorneys for Plaintiff
FAIR Health, Inc.

17

## CONFIDENTIALITY AGREEMENT

This Agreement ("**Agreement**") is entered into as of __February 1__, 2010 ("**Effective Date**") by and between Stephen Foreman, an individual having his principal address at __156 Quarry Lane, Franklin, PA 16323__ ("**Recipient**"), and FAIR Health, Inc., a New York not-for-profit corporation with offices located at 330 Madison Avenue, 9th Floor, New York, NY 10017 ("**Discloser**"). The parties wish to protect and preserve the confidential and/or proprietary nature of certain information and materials of Discloser that may be disclosed or made available to Recipient in connection with consulting services provided by Recipient to Discloser, Syracuse University (the "**School**") and the New York State Attorney General (the "**OAG**") (such services, the "**Purpose**"). In consideration of the foregoing and the rights and obligations set forth herein, both parties hereby agree as follows:

## 1.   PROPRIETARY INFORMATION.

"**Proprietary Information**" means any and all information and material disclosed by or on behalf of Discloser, the School, Ingenix, Inc. ("**Ingenix**") and/or the OAG to Recipient or obtained by Recipient (whether before or after the Effective Date of this Agreement, and whether in writing, or in oral, graphic, electronic or any other form) that is marked or described as, identified in writing as, or provided under circumstances indicating it is, confidential or proprietary. Proprietary Information, includes, without limitation, any (a) trade secret, know-how, idea, invention, process, technique, algorithm, program (whether in source code or object code form), hardware, device, design, schematic, drawing, formula, data, plan, strategy and forecast of Discloser, the School, Ingenix, the OAG and their respective employees, consultants, investors, affiliates, licensors, suppliers, vendors, customers, clients and other persons and entities (collectively, the "**Disclosing Entities**") (b) technical, engineering, manufacturing, product, marketing, servicing, financial, personnel, health insurance claims and other information and materials of the Disclosing Entities, and (c) information, statistics, analysis, opinions, conclusions, observations and/or comparisons obtained or developed through the use and/or manipulation of, or otherwise related to, the foregoing, whether before or after the Effective Date of this Agreement, including, without limitation, any of the foregoing in connection with any prior research by Recipient.

## 2.   NON-DISCLOSURE AND LIMITED USE.

Recipient shall hold all Proprietary Information in strict confidence and shall not disclose any Proprietary Information to any third party. Recipient shall not use any Proprietary Information for the benefit of itself or any third party or for any purpose other than the Purpose. Recipient shall take the same degree of care that it uses to protect its own confidential and proprietary information of similar nature and importance (but in no event less than reasonable care) to protect the confidentiality and avoid the unauthorized use, disclosure, publication or dissemination of the Proprietary Information. Recipient shall not make any copies of the Proprietary Information, except solely to the extent reasonably necessary to carry out the Purpose, or unless otherwise approved in writing in advance by Discloser. Recipient shall not testify in any judicial, arbitration, administrative, legislative or other legal, regulatory or governmental action or proceeding using Proprietary Information without first notifying Discloser and obtaining Discloser's prior written consent, except as otherwise expressly required by law, provided that, if Recipient is required by law to so testify, Recipient shall, prior to any such testimony, provide notice to, and cooperate with, Discloser as further set forth in Section 3 below. Recipient shall not offer or seek to offer any Proprietary Information into evidence, and such Proprietary Information shall not be admissible as evidence, in any judicial, arbitration, administrative legislative or other legal, regulatory or governmental action or proceeding for any purpose whatsoever. Recipient shall not communicate with any member of the media or the public in connection with the Proprietary Information and/or the Purpose, except as otherwise approved in advance in writing by Discloser, or as otherwise expressly directed in advance in writing by Discloser. Except as required by law or as reasonably required to assert its rights hereunder, Recipient shall not disclose the existence or substance of the discussions between the parties or any terms of this

ny-909531

1

Agreement or any related agreement between the parties (or any matters relating thereto), without the prior written consent of Discloser. The obligations of this Section 2 with respect to any item of Proprietary Information or with respect to any discussions or agreements between the parties shall survive any termination or expiration of this Agreement.

3. SCOPE.

The obligations of this Agreement, including the restrictions on disclosure and use, shall not apply with respect to any Proprietary Information to the extent such Proprietary Information: (a) is or becomes publicly known through no act or omission of the Recipient; (b) was rightfully known by Recipient without confidential or proprietary restriction before receipt from Discloser, the School, Ingenix or the OAG, as evidenced by Recipient's contemporaneous written records; or (c) is independently developed by Recipient without the use of or reference to any Proprietary Information, as evidenced by Recipient's contemporaneous written records. In addition, Recipient may use or disclose Proprietary Information to the extent (i) approved in writing in advance by Discloser or (ii) Recipient is legally compelled to disclose such Proprietary Information, provided, however, that prior to any such compelled disclosure, Recipient shall give Discloser reasonable advance notice of any such disclosure and shall cooperate with Discloser in protecting against any such disclosure and/or obtaining a protective order narrowing the scope of such disclosure and/or use of the Proprietary Information.

4. OWNERSHIP.

As between Recipient and Discloser, all Proprietary Information (including, without limitation, all copies, extracts and portions thereof) is and shall remain the sole property of Discloser. Recipient does not acquire (by license or otherwise, whether express or implied) any intellectual property rights or other rights under this Agreement or any disclosure hereunder, except the limited right to use such Proprietary Information in accordance with the express provisions of this Agreement. All rights relating to the Proprietary Information that are not expressly granted hereunder to Recipient are reserved and retained by Discloser.

5. NO WARRANTY; LIMITATION OF LIABILITY.

Except as may be otherwise agreed to by both parties in writing, no warranties of any kind, whether express or implied, are given by Discloser with respect to any Proprietary Information or any use thereof, and the Proprietary Information is provided on an "AS IS" basis. Discloser hereby expressly disclaims all such warranties, including any implied warranties of merchantability and fitness for a particular purpose, non-infringement and accuracy, and any warranties arising out of course of performance, course of dealing or usage of trade. In no event shall Discloser be liable to Recipient for any indirect, special, incidental, punitive or consequential damages of any kind, under any theory of liability, in connection with this Agreement or the subject matter hereof, even if Discloser has been advised of the possibility of such damages.

6. TERMINATION.

Discloser may terminate this Agreement at any time upon written notice, and shall have no obligation to disclose any Proprietary Information or to continue discussions relating to, or to enter into or continue any arrangement or agreement relating to, the Purpose or any other matter, except as agreed in writing by the parties. Sections 3, 4, 5, 6, 7, 9 and, to the extent expressly provided therein, Section 2, shall survive the expiration or termination of this Agreement.

7. REMEDIES.

Recipient agrees that, due to the unique nature of the Proprietary Information, the unauthorized disclosure or use of the Proprietary Information will cause irreparable harm and significant injury to Discloser, the extent of which will be difficult to ascertain and for which there will be no adequate remedy at law. Accordingly, Recipient agrees that Discloser, in addition to any other available remedies, shall have the

right to an immediate injunction and other equitable relief enjoining any breach or threatened breach of this Agreement, without the necessity of posting any bond or other security. Recipient shall notify Discloser in writing immediately upon Recipient's becoming aware of any such breach or threatened breach.

8. **RETURN OF MATERIALS.**

Upon any termination of discussions or any business or other relationship between the parties related to the Purpose, or of this Agreement, or at any time at Discloser's request, (a) Recipient shall promptly return to Discloser, or, at Discloser's request, destroy, all materials (in written, electronic or other form) containing or constituting Proprietary Information, including, without limitation, any copies and portions thereof, and (b) Recipient shall not use the Proprietary Information in any way for any purpose.

9. **MISCELLANEOUS.**

This Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes all prior or contemporaneous representations, discussions, proposals, negotiations, conditions, communications and agreements, whether oral or written, between the parties relating to the subject matter hereof and all past courses of dealing or industry custom. No amendment, modification or waiver of any provision of this Agreement shall be effective unless in writing and signed by duly authorized signatories of both parties. The waiver by either party of a breach of or a default under any provision of this Agreement shall not be construed as a waiver of any subsequent breach of or default under the same or any other provision of this Agreement, nor shall any delay or omission on the part of either party to exercise or avail itself of any right or remedy that it has or may have hereunder operate as a waiver of any right or remedy. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, USA, without reference to its conflicts of laws provisions. All disputes relating to this Agreement shall be brought solely in the state or federal courts located in the borough of Manhattan, New York, New York. Each party hereby consents to the exclusive jurisdiction of the State of New York and waives any defense of forum inconveniens. This Agreement and the rights and obligations hereunder may not be assigned or delegated by Recipient, in whole or part, whether voluntarily, by operation of law, change of control or otherwise, without the prior written consent of Discloser. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be invalid or unenforceable, the remaining portions hereof shall remain in full force and effect and such provision shall be enforced to the maximum extent possible so as to effect the intent of the parties and shall be reformed to the extent necessary to make such provision valid and enforceable. The parties are independent contractors, and neither party shall have any authority of any kind to bind the other party in any respect whatsoever.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the Effective Date by their duly authorized representatives.

**STEPHEN FOREMAN**

By: _Stephen Foreman_
        (signature)
Name: _Stephen Foreman_
        (print)
Title: _____

**FAIR HEALTH, INC.**

By: _____
        (signature)
Name: _Robin Gelburd_
        (print)
Title: _President_

ny-909531

3

At Part ____ of the Supreme Court of the State of New York, held in and for the County of New York, at the New York Courthouse, 60 Centre Street, Room ___ New York, New York 10007, on the __th day of March 2016

P R E S E N T:

      Hon. _____

              Justice.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
────────────────────────────────────x

**FAIR HEALTH, INC.,**                                    Index No. 651473/2016

                **Plaintiff,**

        **- against -**

**STEPHEN FOREMAN,**                              <u>**ORDER TO SHOW CAUSE**</u>

                **Defendant.**
────────────────────────────────────x

      Upon reading and filing of the accompanying Affidavit of Thomas F. Swift, Esq., sworn to March 21, 2016, the exhibits attached thereto, the accompanying Affirmation of Emergency of Andrew P. Karamouzis, Esq., sworn to March 22, 2016, the exhibits attached thereto, and Plaintiff's Memorandum of Law in Support of its Motion for a Temporary Restraining Order and Preliminary Injunction, dated March 22, 2016, and upon the prior pleadings and proceedings in this action; and sufficient cause appearing therefor,

      **LET** Defendant Stephen Foreman ("Foreman" or "Defendant") show cause before the Hon. _____, one of the Justices of the Supreme Court, in Part __ thereof, at the New York County Courthouse, Room ___, 60 Centre Street, New York, New York 10007, on

the ___th day of April, 2016 at _____ o'clock a.m./p.m., or as soon thereafter as counsel

may be heard, why an Order should not be issued and entered pursuant to CPLR 6301, *et seq.*:

<ol type="a">
<li>

Enjoining and restraining Defendant, his agents, representatives, employees, and all others acting in concert with him, and specifically including David Breskin, Esq. and the law firm of Breskin, Johnson & Townsend, and its attorneys and employees (collectively, "Breskin"), during the pendency of this action, from possessing, retaining and/or making use, in any manner whatsoever, of any Proprietary Information (as that term is defined in the underlying Confidentiality Agreement at issue in this action) of Plaintiff FAIR Health, Inc. ("FAIR Health"), and/or any other confidential information, data or records (regardless of the form in which such information is maintained) belonging to Plaintiff FAIR Health and/or its existing customers;

</li>
<li>

Enjoining and restraining Defendant, during the pendency of this action, from (i) disclosing, providing, communicating or otherwise furnishing any Proprietary Information to Plaintiff Folweiler Chiropractic, PS and/or its counsel, Breskin, and (ii) assisting, testifying, providing services and/or otherwise acting as a "consulting expert" in the action entitled *Folweiler Chiropractic, PS vs. FAIR Health, Inc.,* pending in the Superior Court of Washington (King County), Docket No. 15-2-13107-9 SE;

</li>
<li>

Enjoining and restraining Defendant, during the pendency of this action, from disclosing, providing, communicating or otherwise furnishing any Proprietary Information to any other party and/or otherwise acting as a consultant to, or retained expert on behalf of, any party, participating or testifying in: (i) any civil, judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental proceeding against FAIR Health directly, or (ii) in any civil, judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental proceeding challenging FAIR Health data, or the use of it; and

</li>
<li>

Awarding such other and further relief as this Court deems just and proper.

</li>
</ol>

and upon the foregoing, it is hereby

**ORDERED** that, pending the hearing and determination of this motion, Defendant, his

agents, representatives, employees, and all others acting in concert with him, and specifically

2

including Breskin, during the pendency of this action, are hereby enjoined and restrained from possessing, retaining and/or making use, in any manner whatsoever, of any Proprietary Information (as that term is defined in the underlying Confidentiality Agreement at issue in this action) of Plaintiff FAIR Health, Inc., and/or any other confidential information, data or records (regardless of the form in which such information is maintained) belonging to Plaintiff FAIR Health and/or its existing customers;

**ORDERED** that, pending the hearing and determination of this motion, Defendant, his agents, representatives, employees, and all others acting in concert with him, are hereby enjoined and restrained from: (i) disclosing, providing, communicating or otherwise furnishing any Proprietary Information to Plaintiff  Folweiler Chiropratic, PS and/or its counsel, Breskin, and (ii) assisting, testifying, providing services and/or otherwise acting as a "consulting expert" in the action entitled *Folweiler Chiropractic, PS vs. FAIR Health, Inc.,* pending in the Superior Court of Washington (King County), Docket No. 15-2-13107-9 SE;

**ORDERED** that, pending the hearing and determination of this motion, Defendant, his agents, representatives, employees, and all others acting in concert with him, are hereby enjoined and restrained from disclosing, providing, communicating or otherwise furnishing any Proprietary Information to any other party and/or otherwise acting as a consultant to, or retained expert on behalf of, any party, participating or testifying in: (i) any civil, judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental proceeding against FAIR Health directly, or (ii) in any civil, judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental proceeding challenging FAIR Health data, or the use of it;

3

**ORDERED** that, Plaintiff FAIR Health shall be entitled to expedited discovery of Defendant Foreman prior to the determination of the permanent injunction motion, including an examination before trial under oath and request for production of documents.  Any request for production shall be served upon Defendant Foreman on or before _____, 2016, with Defendant's responses due on or before _____, 2016.  The examination before trial of Defendant Foreman shall be held on or before _____, 2016 at the offices of Plaintiff FAIR Health's counsel.

Sufficient cause being alleged, let service of a copy of this Order and the papers on which it is based upon: (i) Stephen Foreman, 156 Quarry Lane, Franklin, Pennsylvania 16323, by overnight courier delivery and/or e-mail and/or personal delivery on or before the ____th day of March  2016, and (ii) David Breskin, Esq., located at 1000 Second Avenue, Suite 3670, Seattle, Washington 98104 by overnight courier delivery and/or e-mail and/or personal delivery, and (iii) the firm of Breskin, Johnson & Townsend located at 1000 Second Avenue, Suite 3670, Seattle, Washington 98104, by overnight courier delivery and/or e-mail and/or personal delivery, be deemed good and sufficient, and it is further

**ORDERED** that, opposition papers, if any, shall be filed and served by overnight courier delivery and/or personal delivery on or before the ____th day of _____ 2016, and reply papers shall be filed and served on or before the ____th day of _____ 2016.

**E    N    T    E    R**

_____
**J. S. C.**

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

——————————————————————x

FAIR HEALTH, INC.,                                    Index No. 651473/2016

                          Plaintiff,                 **AFFIRMATION OF**
                                                     **EMERGENCY OF**
        - against -                                  **ANDREW P. KARAMOUZIS**
                                                     **IN SUPPORT OF ORDER**
STEPHEN FOREMAN,                                     **TO SHOW CAUSE**
                                                     **AND TEMPORARY**
                                                     **RESTRAINING ORDER**

                          Defendant.

——————————————————————x         **Oral Argument Requested**


STATE OF NEW YORK         )
                         )    ss.:
COUNTY OF NASSAU         )

        ANDREW P. KARAMOUZIS, an attorney duly admitted to practice before the courts of

the State of New York, hereby affirms, under penalty of perjury, as follows:

        1.      I am a partner with the firm of Moran • Karamouzis, LLP, counsel to Plaintiff

FAIR Health, Inc. ("FAIR Health") in the above-captioned action.   I am fully familiar with the

facts and circumstances of this action, and respectfully submit this Affirmation of Emergency in

Support of Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction.

        2.      The underlying facts and circumstances of this matter are fully set forth in the

Complaint, dated March 21, 2016, and the Affidavit of Thomas F. Swift in Support of Plaintiff's

Motion for Temporary Restraining Order and Preliminary Injunction, sworn to March 21, 2016,

both of which are filed simultaneously herewith.

        3.      Plaintiff FAIR Health respectfully submits this Affirmation of Emergency and

seeks expedited review of its Motion for a Temporary Restraining Order and Expedited

Discovery on the grounds that FAIR Health and its customers are suffering irreparable,

substantive harm based upon Defendant Stephen Foreman's blatant and continuing violation of his Confidentiality Agreement with FAIR Health.

4.     Earlier today, Plaintiff FAIR Health commenced this action by filing, via ECF, the Summons and Complaint with this Court.

5.     Prior to submitting this application and pursuant to 22 NYCRR 202.7(f), on Monday afternoon, I called Defendant Foreman several times at his office (412-397-4078), at approximately 12:34 p.m. and 1:02 p.m. and 2:05 p.m.   Defendant did not answer any of my calls and I reached an answering machine each time.  On my final call, I left Defendant a detailed voicemail message identifying myself as counsel for Plaintiff FAIR Health and requesting that he call me.

6.     The purpose of my telephone call to Defendant Foreman was to advise him that Plaintiff FAIR Health had commenced a lawsuit against him and would also be moving for a Temporary Restraining Order, by Order to Show Cause,  against him tomorrow morning before this Court.

7.     As I was not able to speak with Defendant Foreman by telephone, I also followed up my voicemail message with an e-mail.   Specifically, at 2:39 p.m., I sent an e-mail to Defendant Foreman at his office e-mail address: foreman@rmu.edu.   The text of my e-mail message to Defendant reads as follows:

> Mr. Foreman-
>
> As per my voicemail message to your office earlier this afternoon, I represent FAIR Health, Inc.
>
> Earlier today, we filed a lawsuit against you in the Supreme Court of new York, County of New York based upon your breach of the Confidentiality Agreement between you and FAIR Health, Inc.  For your convenience, a courtesy copy of the Summons and Complaint is attached.

2

Please be advised that we will be appearing before the Supreme Court of New York, County of New York tomorrow morning at approximately 10:00 am seeking a Temporary Restraining Order, by Order to Show Cause, against you. You are entitled to appear should you choose to do so. The New York County Court house is located at 60 Centre Street, New York, New York 10007 and I will be in Room 119A, the Commercial Division Support Office.

Should you care to discuss this matter this afternoon, I invite you to call me directly at (516) 678-6660 (x603) today. If you need to reach me after 6:00 pm today or tomorrow morning, please call my office and leave me a voicemail message and I will return your call promptly.

*A true and correct of my e-mail to Defendant Foreman, dated March 21, 2016, is attached hereto as Exhibit A.*

8.      At approximately 5:05 P.M., I received a telephone call from Joe Whatley, Esq., a name partner with the law firm of WhatleyKallas LLP. Mr. Whatley advised that he was an attorney and a friend of Defendant Foreman's and that he was calling in an effort to explore early resolution of Plaintiff FAIR Health's claims and requested that we forebear from pursuing a Temporary Restraining Order against Defendant.

9.      In addition to the initial call, I had two more telephone calls with Mr. Whatley later on that afternoon, and an additional telephone call yesterday in a good faith effort to resolve the dispute involving Foreman. Unfortunately, however, Mr. Whatley and I were unable to resolve the underlying dispute between FAIR Health and Defendant Foreman.

10.      Accordingly, at 3:47 p.m., I sent an e-mail to Mr. Whatley at his office e-mail address: jwhatley@whatleykallas.com. The text of my e-mail message to Mr. Whatley reads as follows:

3

Mr. Whatley-

As per my voice mail message to your office and cell phone a few moments ago, please be advised that we will be appearing, on behalf of Plaintiff FAIR Health, Inc., before the Supreme Court of New York, County of New York tomorrow morning at approximately 10:00 am seeking a Temporary Restraining Order, by Order to Show Cause, against you.  You are entitled to appear should you choose to do so.  The New York County Court house is located at 60 Centre Street, New York, New York 10007 and I will be in Room 119A, the Commercial Division Support Office.

Should you need to reach me, you may contact me at (516) 678-6660.

*A true and correct of my e-mail to Mr. Whatley, dated March 22, 2016, is attached hereto as Exhibit B.*

11.    At approximately 4:05 p.m., Mr. Whatley telephoned me and I advised him that I would be appearing before the Court tomorrow morning seeking a Temporary Restraining Order, by Order to Show Cause, against Defendant Foreman.

12.    Absent the grant of expedited injunctive relief, Plaintiff will continue to suffer irreparable harm and severe prejudice based upon Defendant Foreman's continuing violations of the underlying Confidentiality Agreement.

13.    Plaintiff has no adequate remedy at law.

14.    No prior application for the relief requested herein has been made.

15.     For the all of the foregoing reasons, we respectfully request that the Court grant FAIR Health's Motion for a Temporary Restraining Order and Expedited Discovery, and all such other and further relief that the Court deems just and proper.

Dated: Rockville Centre, New York
          March 22, 2016

          _____/s/  Andrew P. Karamouzis_____
                Andrew P. Karamouzis

4

FILED: NEW YORK COUNTY CLERK 03/23/2016 09:28 AM
NYSCEF DOC. NO. 6
Case 1:16-cv-02367-PKC    Document 1-1    Filed 03/30/16    Page 31 of 114

INDEX NO. 651473/2016
RECEIVED NYSCEF: 03/23/2016

## Andrew Karamouzis

| | |
|---|---|
| **From:** | Andrew Karamouzis |
| **Sent:** | Monday, March 21, 2016 2:39 PM |
| **To:** | 'foreman@rmu.edu' |
| **Cc:** | SIOBHAN E. MORAN (smoran@mka-law.com) |
| **Subject:** | FAIR Health, Inc. v. Stephen Foreman, Index No. 651473/2016 (New York Supreme Court) |
| **Attachments:** | Summons 03.21.16 (FILE STAMPED).pdf; Complaint 03.21.16 (FILE STAMPED).pdf; Exhibit A - Foreman Confidentiality Agreement (FILE STAMPED).pdf |

Mr. Foreman-

As per my voicemail message to your office earlier this afternoon, I represent FAIR Health, Inc.

Earlier today, we filed a lawsuit against you in the Supreme Court of new York, County of New York based upon your breach of the Confidentiality Agreement between you and FAIR Health, Inc. For your convenience, a courtesy copy of the Summons and Complaint is attached.

Please be advised that we will be appearing before the Supreme Court of New York, County of New York tomorrow morning at approximately 10:00 am seeking a Temporary Restraining Order, by Order to Show Cause, against you. You are entitled to appear should you choose to do so. The New York County Court house is located at 60 Centre Street, New York, New York 10007 and I will be in Room 119A, the Commercial Division Support Office.

Should you care to discuss this matter this afternoon, I invite you to call me directly at (516) 678-6660 (x603) today. If you need to reach me after 6:00 pm today or tomorrow morning, please call my office and leave me a voicemail message and I will return your call promptly.


Andrew P. Karamouzis, Esq.
Moran Karamouzis LLP
265 Sunrise Highway, Suite 61
Rockville Centre, New York 11570
516.678.6660 (x603)
516.678.6661 (facsimile)
www.mka-law.com



This e-mail may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**Andrew Karamouzis**

| | |
|---|---|
| **From:** | Andrew Karamouzis |
| **Sent:** | Tuesday, March 22, 2016 3:47 PM |
| **To:** | Joe R. Whatley Jr. (jwhatley@whatleykallas.com) |
| **Cc:** | 'foreman@rmu.edu'; SIOBHAN E. MORAN (smoran@mka-law.com) |
| **Subject:** | FAIR Health, Inc. v. Stephen Foreman |

Mr. Whatley-

As per my voice mail message to your office and cell phone a few moments ago, please be advised that we will be appearing, on behalf of Plaintiff FAIR Health, Inc., before the Supreme Court of New York, County of New York tomorrow morning at approximately 10:00 am seeking a Temporary Restraining Order, by Order to Show Cause, against Stephen Foreman. You are entitled to appear should you choose to do so. The New York County Courthouse is located at 60 Centre Street, New York, New York 10007 and I will be in Room 119A, the Commercial Division Support Office.

Should you need to reach me, you may contact me at (516) 678-6660.

Andrew P. Karamouzis, Esq.
Moran Karamouzis LLP
265 Sunrise Highway, Suite 61
Rockville Centre, New York 11570
516.678.6660 (x603)
516.678.6661 (facsimile)
www.mka-law.com



This e-mail may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Case 1:16-cv-02367-PKC    Document 1-1    Filed 03/30/16    Page 33 of 114

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

――――――――――――――――――――――――――x

**FAIR HEALTH, INC.,**                                    Index No. 651473/2016

                               **Plaintiff,**

          - against -                                    **AFFIDAVIT OF**
                                                         **THOMAS F. SWIFT**
                                                         **IN SUPPORT OF**
                                                         **ORDER TO SHOW CAUSE**
**STEPHEN FOREMAN,**                                     **AND MOTION**
                                                         **FOR TEMPORARY**
                                                         **RESTRAINING ORDER**

                               **Defendant.**

――――――――――――――――――――――――――x

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

          **THOMAS F. SWIFT**, being duly sworn deposes and says:

          1.        I am the Deputy General Counsel at FAIR Health, Inc. ("FAIR Health"). I submit

this Affidavit in support of Plaintiff's Order to Show Cause for an immediate Temporary

Restraining Order in order to prohibit Defendant Stephen Foreman ("Defendant" or "Foreman")

from violating the terms of a Confidentiality Agreement that he entered into with Plaintiff FAIR

Health on or about February 1, 2010.

          2.        I have been the Deputy General Counsel of FAIR Health since February 2013. In

my position as Deputy General Counsel, I have knowledge of the facts set forth herein and am

competent to testify to the facts set forth herein if called as a witness. All of the facts set forth

herein are known to me personally, or are true to the best of my knowledge and belief, based

upon my review of business records maintained by FAIR Health in the ordinary course of

business. My personal knowledge, and the records and files maintained by FAIR Health in the

regular course of business, form the basis of this Affidavit. It is the regular course of FAIR

Health's business to maintain such records and files at the time of the acts, transactions, occurrences or events.

## A.    The Creation of FAIR Health

3.    FAIR Health, Inc. is a small, independent not-for-profit New York corporation, qualifying as a public charity under section 501(c)(3) of the Internal Revenue Code. As a tax-exempt charitable organization, FAIR Health's mission is to bring transparency to healthcare costs and health insurance information through comprehensive data products, free consumer resources and support of health services research.

4.    FAIR Health was established in October 2009 as part of a settlement of an investigation by then New York State Attorney General (and now Governor) Andrew Cuomo (the "Settlement") into Ingenix, a wholly-owned subsidiary of UnitedHealth Group Incorporated ("Ingenix"). The New York Attorney General, while not proceeding to fact finding on the underlying allegations, found that "Ingenix has a conflict of interest in creating the schedules used as a basis for reimbursement by UnitedHealth" to determine reimbursements for patients who received medical services from out of network providers.

5.    As part of the Settlement, a "qualified, independent, university-level school of public health or other appropriate school in New York was to be selected to "establish and operate an independent database for academic research and as a tool for determining reimbursement rates." A "Not-for-Profit Company, as determined by the Office of the Attorney General will be the owner and operator of the New Database."

6.    FAIR Health was incorporated as a non-profit 501(c)(3) specifically to create, own and operate the new database, and Syracuse University was selected to manage the expert academic consortium established to provide advice on the creation of the independent database.

2

As the New York State Attorney General explicitly detailed, the healthcare system would be better served by the creation of "a new, independent database, not controlled by an insurer, to be used for determining fair and accurate reimbursement rates."

7.     Thereafter, FAIR Health, in consultation with a group of academic experts at Syracuse University and other universities around the U.S., together with a separate national, independent advisory board comprised of statistical and economic experts, established the new database.

8.     FAIR Health's mandate is to create and provide an independent, impartial source of data regarding the cost of healthcare procedures, to educate consumers and offer them free tools to make it easier to estimate out-of-network expenses, to disseminate such data to all participants in the health care arena to promote fair billing and reimbursement practices, and to make such data available for policymaking and academic research (the "FAIR Health Data Products").

9.     FAIR Health's Data Products became available under licenses beginning in 2011. All of FAIR Health's licenses for its Data Products specifically contain strict confidentiality provisions regarding the use and non-disclosure of the Data Products.

**B.     The Confidentiality Agreement Between FAIR Health and Defendant**

10.     Defendant Foreman, who is upon information and belief an Associate Professor of Health Care Administration at Robert Morris University, worked with the academic experts at Syracuse University and FAIR Health on the creation of the new database.  Upon information and belief, Foreman also worked with, and advised, the New York State Attorney General's Office ("NY OAG") concerning its investigation of Ingenix.  As part of his work on behalf of FAIR Health, on or about February 1, 2010, Foreman signed a Confidentiality Agreement

concerning his work. *A true and correct copy of the Confidentiality Agreement is attached hereto as Exhibit A.*

11.    In consideration for his services, Defendant charged an hourly rate of $350.00 (Three Hundred Fifty Dollars) per hour.

12.    Defendant billed the sum of $33,127.87 (Thirty Three Thousand One Hundred Twenty Seven Dollars Eighty Seven Cents) for his professional services, which sum was paid to Defendant in full by FAIR Health. *A true and correct copy of the FAIR Health Payment Receipt, dated July 20, 2010, reflecting the $33,127.87 payment to Defendant is attached hereto as Exhibit B.*

13.    Under the terms of the Confidentiality Agreement, Foreman agreed "to protect and preserve the confidential and/or proprietary nature of certain information and materials [of FAIR Health] that may be disclosed or made available to [Foreman] in connection with consulting services provided by Foreman to FAIR Health, Syracuse University and the New York State Attorney General." *See Confidentiality Agreement, p. 1 (Exhibit A).*

14.    Under Section 1 of the Confidentiality Agreement, FAIR Health's "Proprietary Information" is defined broadly to include "any and all information and material disclosed by or on behalf of [FAIR Health, Syracuse University,] Ingenix, Inc. ... and/or the [New York State Attorney General] to Foreman or obtained by Foreman (whether before or after the Effective Date of this Agreement, and whether in writing, or in oral, graphic, electronic or any other form). Furthermore, "Proprietary Information" includes without limitation any (a) trade secret, know-how, idea, invention, process, technique, algorithm, program, hardware, device, design, plan, strategy or forecast of FAIR Health, Syracuse University, Ingenix, the New York State Attorney General and their respective employees, consultants, investors, affiliates, licensors, suppliers,

4

vendors, customers, clients and other persons and entities (collectively the "Disclosing Entities"). Proprietary Information" also includes (b) technical, engineering, manufacturing, product, marketing, servicing, financial, personnel, health insurance claims and other information and materials of the Disclosing Entities as well as (c) information, statistics, analysis, opinions, conclusions, observations and/or comparisons obtained or developed through the use and/or manipulation of, or otherwise related to, the foregoing whether before or after, the Effective Date of the Confidentiality Agreement including, without limitation, any of the foregoing in connection with any prior research by Foreman. *See Confidentiality Agreement, ¶ 1 (Exhibit A).*

15.     Under Section 2 of the Confidentiality Agreement, Defendant Foreman is required to hold such Proprietary Information "in strict confidence" and he is not permitted to "use any Proprietary Information for the benefit of [yourself] or any third party or for any purpose other than" your work for FAIR Health, Syracuse University, and the New York State Attorney General.    Furthermore, under Section 2, Foreman "shall not testify in any judicial, arbitration, administrative, legislative or other legal, regulatory or governmental action or proceeding using Proprietary Information without first notifying FAIR Health and obtaining FAIR Health's prior written consent."     Finally, under Section 2 of the Confidentiality Agreement, Foreman "shall not offer or seek to offer any Proprietary Information into evidence and such Proprietary Information shall not be admissible as evidence, in any judicial, arbitration, administrative, legislative or other legal, regulatory or governmental action or proceeding for any purpose whatsoever." *See Confidentiality Agreement, ¶ 2 (Exhibit A).*

16.     Under Section 7 of the Confidentiality Agreement, the parties agreed that the unauthorized "disclosure or use of Proprietary Information will cause irreparable harm and significant injury" to FAIR Health and as a result Foreman agreed that FAIR Health would have

the right to obtain "an immediate injunction and other equitable relief enjoining any breach or threatened breach" of the Confidentiality Agreement without the necessity of posting any bond or other security. *See Confidentiality Agreement, ¶ 7 (Exhibit A).*

17.     Under Section 9 of the Confidentiality Agreement, the Confidentiality Agreement is governed by the laws of the State of New York and all disputes may be brought only in the Courts located in Manhattan, New York. *See Confidentiality Agreement, ¶ 9 (Exhibit A).*

18.     The Proprietary Information, which forms the basis of FAIR Health's Data Products and includes the content of confidential discussions regarding the options explored in creating such products, represents valuable, confidential and proprietary trade secrets of FAIR Health that provide it with a competitive advantage in its business. FAIR Health has expended tremendous effort and resources to cultivate and develop the Proprietary Information. Moreover, the Proprietary Information is not generally known to competitors or disclosed to the public.

## C.     The Folweiler Action Against FAIR Health

19.     On or about May 29, 2015, FAIR Health was sued in a putative class action in the matter of *Folweiler Chiropractic, PS v. FAIR Health, Inc.*, No, 15-2-13107-9 SEA (Superior Court of the State of Washington, King County) (the "*Folweiler* Action"). *A true and correct copy of Plaintiff's Complaint, dated May 29, 2015, in the Folweiler Action is attached hereto as Exhibit C.*

20.     Plaintiff's Complaint directly and unequivocally attacks FAIR Health's database. *See Plaintiff's Complaint, pp. 12-13 (Exhibit C).* Plaintiff's Complaint alleges that FAIR Health has created a "flawed" database for use by auto insurers to unfairly reduce their payments to health care providers on PIP claims submitted in Washington state. *Id., pp. 7, 12-13 (Exhibit C).* Plaintiff further alleges that FAIR Health violated the Washington State Consumer Protection

Act by marketing and licensing an allegedly defective "database" and that FAIR Health "knew

and expected" that insurers would use such databases to make inappropriate reductions of health

care provider bills. *Id., pp. 5-7 (Exhibit C)*.

21.     Plaintiff's Complaint in the *Folweiler* Action specifically alleges, *inter alia*, that:

- Before March 31, 2011, FAIR Health changed or modified the Ingenix database. FAIR Health "rebranded" or renamed the changed or modified version of the Ingenix database as the "FAIR Health" database. FAIR Health then marketed the new FAIR Health database to insurers and bill auditors for use in auditing and paying health care provider bills.

- FAIR Health marketed its database as more transparent, objective, reliable and accessible than the Ingenix database previously used by bill auditors, and insurers to review and pay health care provider bills on insurance claims.

- The FAIR Health database had many of the same types of flaws, criticisms and/or limitations identified in the prior investigations conducted by the New York State Attorney General.

- Prior to March 31, 2011, FAIR Health met with representatives of the health insurance industry and/or health insurance companies that had used the Ingenix database to discuss FAIR Health's new databases and/or planned changes and/or modifications to the Ingenix database.

- During one or more of these meetings, representatives of the insurance industry or insurance companies stated in words or substance that insurers would not license and/or use the FAIR Health database if it significantly or substantially increased the amount of their payments to health care providers on insurance claims compared to amounts paid using the Ingenix database.

- In response, FAIR Health agreed in words or substance that it would not make changes and modifications to the Ingenix database that would result in insurers having to pay substantially more in health care provider costs than compared to using the Ingenix database.

- FAIR Health knew or should have known that insurers who paid health care provider bills would use the FAIR Health database in the same manner as the Ingenix database.

*Id., pp. 5-7 (Exhibit C )*.

22.    FAIR Health denies all of the substantive allegations in the _Folweiler_ Action and is vigorously defending against Plaintiff's claims.

23.    Plaintiff is represented in the _Folweiler_ Action by David Breskin, Esq. ("Breskin"), of the law firm of Breskin, Johnson & Townsend located in Seattle, Washington.

24.    On or about February 29, 2016, FAIR Health was served with Plaintiff's Fifth Interrogatories and Requests for Production in the _Folweiler_ Action, wherein Plaintiff demanded that FAIR Health produce "any and all documents relating to Dr. Stephen Foreman, Ph.D., including but not limited to any agreements, email, memorandum, notes or other documents in which Dr. Foreman's name appears and/or any documents that reflect meetings which Dr. Foreman attended with officers, employees or representatives of FH." _A true and correct copy of the relevant excerpts from Plaintiff's Fifth Interrogatories and Requests for Production in the Folweiler Action is attached as Exhibit D._

25.    On March 15, 2016, Plaintiff responded to FAIR Health's discovery demands in the _Folweiler_ Action wherein FAIR Health demanded that Plaintiff "[p]roduce all communications by and between Plaintiff and/or its attorneys and Stephen Foreman." _A true and correct copy of the relevant excerpts from Plaintiff's Response to Defendant's First Set of interrogatories and Request for Production is attached hereto as Exhibit E._ Plaintiff objected to this request on the grounds of attorney work product "and because the request seeks impermissible disclosure of consulting expert," identifying and disclosing Stephen Foreman as the "consulting expert" on Plaintiff's claims against FAIR Health, notwithstanding the Confidentiality Agreement that Foreman signed with FAIR Health. _Id._

26.    Furthermore, in response to FAIR Health's discovery demands, Plaintiff identified Stephen Foreman as the only source of support for other allegations in Plaintiff's

Complaint, including information Foreman allegedly obtained from FAIR Health's President. *Id.*, at 2.

27.    On or about February 8, 2016, Plaintiff also served its Eighth Amended Notice of 30(b)(6) Deposition of FAIR Health, Inc., demanding that FAIR Health produce a witness to testify on topics including:

- When, how and why the FAIR Health database was first created.

- The similarity or relationship, if any, between the data used in the Ingenix MDR databases and the FAIR Health databases.

- The changes, if any, made to the data collection processes, data validation methods and/or databases themselves and the reasons for such changes.

- The validation process used by FAIR health with regard to its charge data

- Any discussions or representations between FAIR Health and any insurer or insurance industry representative that using the FAIR Health database would not significantly increase the amount paid to health care providers on insurance claims compared to using the Ingenix database.

*A true and correct copy of Plaintiff's Eighth Amended Notice of 30(b)(6) Deposition of FAIR Health, Inc. is attached hereto as Exhibit F.*

28.    Foreman's engagement as Plaintiff's "consulting expert" on these topics, and likely many others, involving FAIR Health and its Proprietary Information in the *Folweiler* Action, is in direct violation of the express terms of the Confidentiality Agreement that Defendant Foreman entered into with FAIR Health. *See Confidentiality Agreement (Exhibit A).*

**D.    FAIR Health is Entitled to Immediate Injunctive Relief Against Defendant**

29.    At present, Plaintiff is scheduled to conduct depositions in New York of (i) FAIR Health's Rule 30(b)(6)witness on March 24, 2016 and (ii) FAIR Health's President, Robin

Gelburd, on March 25, 2016.  FAIR Health has moved for a protective order in the *Folweiler* Action to adjourn the March 25th deposition of Ms. Gelburd because it is scheduled for Good Friday.

30.    Based upon the allegations of Plaintiff's Complaint, the specific topics identified in Plaintiff's Eighth Amended Notice of 30(b)(6) Deposition of FAIR Health, and the undisputed fact that Defendant Foreman worked for FAIR Health and had intimate knowledge of, access to and use of the Proprietary Information, there is no doubt that Defendant has provided, communicated, disclosed or otherwise furnished Plaintiff and its counsel, Breskin, with Proprietary Information belonging to FAIR Health in furtherance of Plaintiff's prosecution of its claims against FAIR Health, and will continue to do so absent the grant of immediate injunctive relief enjoining Defendant.  Indeed, Breskin has identified Defendant as a "consulting expert" in Plaintiff's discovery responses to FAIR Health in the *Folweiler* Action.

31.    In another lawsuit brought by Breskin in 2012 in the State of Washington (*Kerbs v. Progressive, 10-2-30608-1 SEA*), involving the use of Ingenix data, Defendant Foreman testified as an expert for Breskin and admitted, under oath, to the detailed nature of his involvement with FAIR Health:

> Q.    [BRESKIN]  Well, at the time you were involved in the planning process and the – and the sort of creation of FAIR Health, what did you understand the goal was?
>
> A.    [FOREMAN]  I understood that the goal was ultimately to replace the entire Ingenix database because it could not do what it was expected to do.
>
> *       *       *
>
> Q.    [BRESKIN]    Okay.  And defense counsel asked you about your background relative to the Ingenix database that we're concerned about and your investigation and work with that.  Can you give us a thumbnail sketch of what you've done"

10

A.    [FOREMAN]  ....in 2008 I got a call from the New York Attorney General asking me to help them evaluate the Ingenix PHCS fee schedule. They were concerned that – very specifically they believed that the Ingenix percentile values were biased downward compared to physician fee – you know, values – schedule values in New York State.

So I worked -- I worked with them on the project that led to the Code Blue Report. And as a result of that, I also worked with them in the transition of that work – and project as FAIR Health was established.

I worked with the research team at Syracuse University that FAIR Health retained in order to plan an interim fix to the Ingenix fee schedule and to develop a long-term plan for doing – doing things a different way.

\*    \*    \*

Q.    [BRESKIN]  Okay. And can you give us some sense of how long this investigation [by the NYS Attorney General] went on and what was involved in – in that in terms of just the nature of the investigation?

A.    [FOREMAN[  We subpoenaed records for five years for 20 CPT-geozip combinations for five metropolitan areas in New York to begin with. We did that in May 2008 as best as I can recollect. That analysis took place in May, June and early July.

In August we subpoenaed records statewide for all health  insurers from – for those 20 CPT codes. And so additional work continued in August and September .... In the spring of 2009/summer 2009 when I came back, the AG was bringing FAIR Health – was creating FAIR Health and bringing Syracuse on. And so then in November/December 2009 into April 2010 we evaluated that New York as a part of the establishment of FAIR Health and getting Syracuse involved.

32.    Likewise, in another putative class action lawsuit entitled _Darlery Franco, et al. v. Connecticut General Life Insurance Co., et al._, Case No. 07-CV-6039 (SRC)(PS) (D.N.J.), on April 6, 2010, Defendant Foreman submitted an "Expert Report," in which he detailed his extensive work for FAIR Health, as follows:

6.    I currently served as special expert to the contract monitor for the New York Attorney General's project involving production and distribution of unbiased, transparent data for the purpose of health insurance firms' payment of out-of-network claims (the FAIR Health Project).

11

7.      In connection with the FAIR Health project, I have also been appointed Senior Research Professor at Syracuse University in which capacity I work with colleagues from Syracuse, the University of Rochester, Cornell University, the University of Illinois, Chicago, the University of Colorado, the State University of New York, Albany, and others to develop an interim correction for the PHCS and MDR percentile tables and permanent changes to them by developing and implementing methodologies that will make them as accurate and transparent as current science allows.

\*     \*     \*

53.     FAIR Health is a nonprofit corporation established to assume responsibility for production and distribution of the MDR and PHCS rate tables in an accurate, transparent and open manner as well as providing consumers with a way to ascertain and compare out-of-network physician pricing.

54.     The New York Attorney General and FAIR Health have tasked an independent group of researchers from a number of prominent New York universities (and others) with developing and implementing recommendations for modifications to MDR and PHCS to achieve the objectives of accuracy and transparency for the data and the rates tables. The universities involved (called the Upstate Research Group) include Syracuse, Rochester, Cornell, SUNY Buffalo, Colorado, Robert Morris and the Illinois, Chicago and SUNY Albany.

55.     An independent contract monitor has been tasked with ensuring that both FAIR Health and the Upstate Research Group accomplish the tasks envisioned for the project.

56.     I have been employed both as independent expert to the contract monitor and as a senior research scientist at Syracuse to help provide assistance and leadership to the project.

57.     The changes to MDR and PHCS will be accomplished in two stages or phases. In Phase One the Upstate Research Group will make recommendations to FAIR Health regarding temporary changes that can be accomplished given the expediency of time and available data to make the rate tables more accurate and transparent.

58.     For Phase Two the Upstate Research Group will make recommendations to FAIR Health regarding full and completed overhaul of the data and the rate tables in order to provide optimal accuracy and transparency.

12

59.    The Upstate Research Group has conducted planning sessions for Phase One and Phase Two and has provided confidential reports to FAIR Health containing recommendations. I have been involved in providing expertise and leadership for these activities.

60.    The Upstate Research Group is involved in evaluating data subpoenaed by the New York Attorney General, Medicare data, data maintained by Ingenix, and other information, in order to accomplish Phase One. I have been involved in providing expertise and leadership for these activities.

33.    Thus, it is crystal clear that Defendant Foreman had an intimate working knowledge of FAIR Health, its Proprietary Information, including its methodologies, and the confidential recommendations of the "Upstate Research Group" to FAIR Health, based upon his consulting work for FAIR Health.

34.    But the difference between the _Progressive_ and _Connecticut General_ actions, which were both lawsuits against insurers who used data from Ingenix, and the _Folweiler_ Action is that, in this case, Defendant is acting as a "consulting expert" directly against FAIR Health and disclosing and using confidences and knowledge that he gleaned from and about FAIR Health, including the Proprietary Information, to attack FAIR Health in direct violation of Section 2 of the Confidentiality Agreement.

35.    In short, Defendant Foreman is betraying his obligations of confidentiality to FAIR Health and acting as a "hired gun" for Breskin to provide Breskin and Plaintiff Folweiler with confidential, proprietary, strategic and tactical information to use against FAIR Health, in direct violation of the Confidentiality Agreement.

36.    The situation in this case is precisely why Section 2 of the Confidentiality Agreement requires Defendant to hold FAIR Health's Proprietary Information "in strict confidence" and prohibits him from "us[ing] any Proprietary Information for the benefit of

[yourself] or any third party or for any purpose other than" your work for FAIR Health, Syracuse University, and the New York State Attorney General.    *See Confidentiality Agreement*, ¶ 2 *(Exhibit A)*.

37.    Section 2 also provides that Defendant Foreman "shall not testify in any judicial, arbitration, administrative, legislative or other legal, regulatory or governmental action or proceeding using Proprietary Information without first notifying FAIR Health and obtaining FAIR Health's prior written consent."    Clearly, Breskin's belated disclosure and classification of Defendant Foreman as merely a "consulting expert" is carefully designed to try to avoid these otherwise clear restrictions.

38.    It is plain that Defendant Foreman's past and continuing breach of his contractual obligations under the Confidentiality Agreement have caused and continue to cause irreparable harm to FAIR Health. Likewise, as set forth in detail herein, FAIR Health has demonstrated a strong likelihood of success on the merits of its claims, as well as a balancing of the equities in its favor.

39.    Finally, Plaintiff FAIR Health also seeks and is entitled to expedited discovery from Defendant Foreman in the form of a deposition and production of documents, prior to the preliminary injunction hearing, in order to  ascertain the full extent of Defendant Foreman's breach of the Confidentiality Agreement.    Given that Defendant Foreman is acting as a "consulting expert" against Plaintiff Fair Health, expedited discovery is necessary and appropriate to maintain the status *quo* and avoid further irreparable harm to Plaintiff Fair Health.

40.    There has been no prior request for the relief sought herein.

41.    Accordingly, for all of the foregoing reasons, Plaintiff FAIR Health is entitled to immediate injunctive relief in the form of a Temporary Injunction against Defendant Foreman, as set forth in the accompanying Order to Show Cause, expedited discovery against Defendant Foreman as set forth in the accompanying Memorandum of Law and a permanent injunction, as set forth in FAIR Health's Complaint, against Defendant Foreman.

Dated: New York, New York
        March 21, 2016

MARRIAN FENTON
Notary Public, State of New York
No. 01FE6326813
Qualified in Westchester County
Commission Expires July 20, 2019

_____
Thomas F. Swift

Sworn to before me this
21st day of March, 2016

_____
Notary Public

15

## CONFIDENTIALITY AGREEMENT

This Agreement ("**Agreement**") is entered into as of ___Fe b r u a r y  1___, 2010 ("**Effective Date**") by and between Stephen Foreman, an individual having his principal address at ___156 Quarry Lane, Franklin, PA 16323___ ("**Recipient**"), and FAIR Health, Inc., a New York not-for-profit corporation with offices located at 330 Madison Avenue, 9th Floor, New York, NY 10017 ("**Discloser**"). The parties wish to protect and preserve the confidential and/or proprietary nature of certain information and materials of Discloser that may be disclosed or made available to Recipient in connection with consulting services provided by Recipient to Discloser, Syracuse University (the "**School**") and the New York State Attorney General (the "**OAG**") (such services, the "**Purpose**"). In consideration of the foregoing and the rights and obligations set forth herein, both parties hereby agree as follows:

1. **PROPRIETARY INFORMATION.**

"**Proprietary Information**" means any and all information and material disclosed by or on behalf of Discloser, the School, Ingenix, Inc. ("**Ingenix**") and/or the OAG to Recipient or obtained by Recipient (whether before or after the Effective Date of this Agreement, and whether in writing, or in oral, graphic, electronic or any other form) that is marked or described as, identified in writing as, or provided under circumstances indicating it is, confidential or proprietary. Proprietary Information, includes, without limitation, any (a) trade secret, know-how, idea, invention, process, technique, algorithm, program (whether in source code or object code form), hardware, device, design, schematic, drawing, formula, data, plan, strategy and forecast of Discloser, the School, Ingenix, the OAG and their respective employees, consultants, investors, affiliates, licensors, suppliers, vendors, customers, clients and other persons and entities (collectively, the "**Disclosing Entities**") (b) technical, engineering, manufacturing, product, marketing, servicing, financial, personnel, health insurance claims and other information and materials of the Disclosing Entities, and (c) information, statistics, analysis, opinions, conclusions, observations and/or comparisons obtained or developed through the use and/or manipulation of, or otherwise related to, the foregoing, whether before or after the Effective Date of this Agreement, including, without limitation, any of the foregoing in connection with any prior research by Recipient.

2. **NON-DISCLOSURE AND LIMITED USE.**

Recipient shall hold all Proprietary Information in strict confidence and shall not disclose any Proprietary Information to any third party. Recipient shall not use any Proprietary Information for the benefit of itself or any third party or for any purpose other than the Purpose. Recipient shall take the same degree of care that it uses to protect its own confidential and proprietary information of similar nature and importance (but in no event less than reasonable care) to protect the confidentiality and avoid the unauthorized use, disclosure, publication or dissemination of the Proprietary Information. Recipient shall not make any copies of the Proprietary Information, except solely to the extent reasonably necessary to carry out the Purpose, or unless otherwise approved in writing in advance by Discloser. Recipient shall not testify in any judicial, arbitration, administrative, legislative or other legal, regulatory or governmental action or proceeding using Proprietary Information without first notifying Discloser and obtaining Discloser's prior written consent, except as otherwise expressly required by law, provided that, if Recipient is required by law to so testify, Recipient shall, prior to any such testimony, provide notice to, and cooperate with, Discloser as further set forth in Section 3 below. Recipient shall not offer or seek to offer any Proprietary Information into evidence, and such Proprietary Information shall not be admissible as evidence, in any judicial, arbitration, administrative legislative or other legal, regulatory or governmental action or proceeding for any purpose whatsoever. Recipient shall not communicate with any member of the media or the public in connection with the Proprietary Information and/or the Purpose, except as otherwise approved in advance in writing by Discloser, or as otherwise expressly directed in advance in writing by Discloser. Except as required by law or as reasonably required to assert its rights hereunder, Recipient shall not disclose the existence or substance of the discussions between the parties or any terms of this

ny-909531

1

Agreement or any related agreement between the parties (or any matters relating thereto), without the prior written consent of Discloser. The obligations of this Section 2 with respect to any item of Proprietary Information or with respect to any discussions or agreements between the parties shall survive any termination or expiration of this Agreement.

3.   SCOPE.

The obligations of this Agreement, including the restrictions on disclosure and use, shall not apply with respect to any Proprietary Information to the extent such Proprietary Information: (a) is or becomes publicly known through no act or omission of the Recipient; (b) was rightfully known by Recipient without confidential or proprietary restriction before receipt from Discloser, the School, Ingenix or the OAG, as evidenced by Recipient's contemporaneous written records; or (c) is independently developed by Recipient without the use of or reference to any Proprietary Information, as evidenced by Recipient's contemporaneous written records. In addition, Recipient may use or disclose Proprietary Information to the extent (i) approved in writing in advance by Discloser or (ii) Recipient is legally compelled to disclose such Proprietary Information, provided, however, that prior to any such compelled disclosure, Recipient shall give Discloser reasonable advance notice of any such disclosure and shall cooperate with Discloser in protecting against any such disclosure and/or obtaining a protective order narrowing the scope of such disclosure and/or use of the Proprietary Information.

4.   OWNERSHIP.

As between Recipient and Discloser, all Proprietary Information (including, without limitation, all copies, extracts and portions thereof) is and shall remain the sole property of Discloser. Recipient does not acquire (by license or otherwise, whether express or implied) any intellectual property rights or other rights under this Agreement or any disclosure hereunder, except the limited right to use such Proprietary Information in accordance with the express provisions of this Agreement. All rights relating to the Proprietary Information that are not expressly granted hereunder to Recipient are reserved and retained by Discloser.

5.   NO WARRANTY; LIMITATION OF LIABILITY.

Except as may be otherwise agreed to by both parties in writing, no warranties of any kind, whether express or implied, are given by Discloser with respect to any Proprietary Information or any use thereof, and the Proprietary Information is provided on an "AS IS" basis. Discloser hereby expressly disclaims all such warranties, including any implied warranties of merchantability and fitness for a particular purpose, non-infringement and accuracy, and any warranties arising out of course of performance, course of dealing or usage of trade. In no event shall Discloser be liable to Recipient for any indirect, special, incidental, punitive or consequential damages of any kind, under any theory of liability, in connection with this Agreement or the subject matter hereof, even if Discloser has been advised of the possibility of such damages.

6.   TERMINATION.

Discloser may terminate this Agreement at any time upon written notice, and shall have no obligation to disclose any Proprietary Information or to continue discussions relating to, or to enter into or continue any arrangement or agreement relating to, the Purpose or any other matter, except as agreed in writing by the parties. Sections 3, 4, 5, 6, 7, 9 and, to the extent expressly provided therein, Section 2, shall survive the expiration or termination of this Agreement.

7.   REMEDIES.

Recipient agrees that, due to the unique nature of the Proprietary Information, the unauthorized disclosure or use of the Proprietary Information will cause irreparable harm and significant injury to Discloser, the extent of which will be difficult to ascertain and for which there will be no adequate remedy at law. Accordingly, Recipient agrees that Discloser, in addition to any other available remedies, shall have the

ny-909531

2

right to an immediate injunction and other equitable relief enjoining any breach or threatened breach of this Agreement, without the necessity of posting any bond or other security. Recipient shall notify Discloser in writing immediately upon Recipient's becoming aware of any such breach or threatened breach.

8.    **RETURN OF MATERIALS.**

Upon any termination of discussions or any business or other relationship between the parties related to the Purpose, or of this Agreement, or at any time at Discloser's request, (a) Recipient shall promptly return to Discloser, or, at Discloser's request, destroy, all materials (in written, electronic or other form) containing or constituting Proprietary Information, including, without limitation, any copies and portions thereof, and (b) Recipient shall not use the Proprietary Information in any way for any purpose.

9.    **MISCELLANEOUS.**

This Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes all prior or contemporaneous representations, discussions, proposals, negotiations, conditions, communications and agreements, whether oral or written, between the parties relating to the subject matter hereof and all past courses of dealing or industry custom. No amendment, modification or waiver of any provision of this Agreement shall be effective unless in writing and signed by duly authorized signatories of both parties. The waiver by either party of a breach of or a default under any provision of this Agreement shall not be construed as a waiver of any subsequent breach of or default under the same or any other provision of this Agreement, nor shall any delay or omission on the part of either party to exercise or avail itself of any right or remedy that it has or may have hereunder operate as a waiver of any right or remedy. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, USA, without reference to its conflicts of laws provisions. All disputes relating to this Agreement shall be brought solely in the state or federal courts located in the borough of Manhattan, New York, New York. Each party hereby consents to the exclusive jurisdiction in the State of New York and waives any defense of forum inconveniens. This Agreement and the rights and obligations hereunder may not be assigned or delegated by Recipient, in whole or part, whether voluntarily, by operation of law, change of control or otherwise, without the prior written consent of Discloser. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be invalid or unenforceable, the remaining portions hereof shall remain in full force and effect and such provision shall be enforced to the maximum extent possible so as to effect the intent of the parties and shall be reformed to the extent necessary to make such provision valid and enforceable. The parties are independent contractors, and neither party shall have any authority of any kind to bind the other party in any respect whatsoever.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the Effective Date by their duly authorized representatives.

**STEPHEN FOREMAN**                    **FAIR HEALTH, INC.**

By: _Stephen Foreman_          By: _[signature]_
            (signature)                              (signature)
Name: _Stephen Foreman_        Name: _Robin Gelburd_
            (print)                                    (print)
Title: _____        Title: _President_

# FAIR Health, Inc.

## All transactions from All dates for Stephen Foreman, PhD.

| Date | Type | No. | Payee | Category | Total |
|------|------|-----|-------|----------|-------|
| 07/22/2010 | Check | 1492 | Stephen Foreman, PhD. | -Split- | $33,127.87 |

07/22/2010

Stephen Foreman, PhD.                                                **33,127.87

Thirty-three thousand one hundred twenty-seven and 87/100***************************************************

Stephen Foreman, PhD.
156 Quarry Lane
Franklin, PA  16323

07/22/2010          Stephen Foreman, PhD.

31,150.00
1,977.87

10001 Cash:Chase Bank Checking                                        33,127.87

07/22/2010          Stephen Foreman, PhD.

31,150.00
1,977.87

10001 Cash:Chase Bank Checking                                        33,127.87

FILED

15 MAY 29 PM 4:16

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 15-2-13107-9 SEA

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY**

| | |
|---|---|
| FOLWEILER CHIROPRACTIC, PS, a Washington professional services corporation, | Cause No.: |
| Plaintiffs, | **CLASS ACTION** |
| vs. | COMPLAINT FORVIOLATION OF WASHINGTON CONSUMER PROTECTION ACT, RCW §19.86 et seq, |
| FAIR HEALTH, INC., a New York Corporation, | |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff, Folweiler Chiropractic, PS, ["Folweiler" or "Plaintiff"] individually and on behalf of a Class of similarly situated Washington health care providers ("providers") alleges the following Complaint against Defendant Fair Health, Inc. ("Fair Health" or "FH"):

## I.   PARTIES

1.1     Folweiler Chiropractic, PS ("Folweiler") is a professional services corporation that provides chiropractic and massage therapy care in King County, Washington.

1.2     Defendant Fair Health, Inc. ("FH") is a foreign company doing business in King County, Washington. FH has licensed its databases including the "FH RV Benchmark Database" for use by health insurers and auto insurers in Washington and King County in paying medical expense bills submitted by Washington health care providers under the insurer's policy.

1.3     FH has also provided assistance and data to expert witnesses for automobile insurers in King County Superior Court cases

CLASS ACTION COMPLAINT - 1

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## II.    FACTUAL ALLEGATIONS

2.1    Over the period from at least October 2009 to December 31, 2013, the Washington Personal Injury Protection ("PIP") Statute required that automobile insurers provide in their policies issued in Washington "medical and hospital benefits" with minimum limits of $10,000. The term "medical and hospital" benefits is defined in the PIP Statute to mean the payment of all reasonable and necessary medical expenses incurred as a result of a covered accident.

2.2    Over the period from June 1, 2011 to December 31, 2013, the Washington Administrative Code has required that auto insurers adopt reasonable procedures for investigating PIP insurance claims before refusing to pay them in full.

2.3    Over the period from June 1, 2011 to December 31, 2011, the Washington Administrative Code has required that auto insurers reasonably investigate PIP insurance claims before denying full payment of the claim.

2.4    Over the period from June 1, 2011 to December 31, 2013, Dr. Folweiler provided care and treatment to patients who had PIP coverage under a Progressive automobile insurance policy issued in Washington (a "Progressive patient" herein).

2.5    On those occasions when he provided such care and treatment to a Progressive patient, Dr. Folweiler billed Progressive under the PIP coverage in the automobile policy.

2.6    The amount Dr. Folweiler billed for the treatment provided was reasonable for Dr. Folweiler's services.

2.7    Over the period from June 1, 2011 to December 31, 2013, when Dr. Folweiler submitted bills to Progressive, his bills were sent to Mitchell Medical to audit, review, process and limit using the 90th percentile of the FH RV Benchmark Database or other FH database.

2.8    Over the period from June 1, 2011 to December 31, 2013, when Dr. Folweiler submitted bills to Progressive, his bills were reduced and paid by Progressive at lower amounts than the amount billed based on Mitchell Medical and Progressive limiting the reimbursement amount to an amount that was no more than the 90th percentile of charges for the same treatment procedure in the same geographic area that were contained in the FH RV Benchmark Database.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.9     On each occasion that Dr. Folweiler was paid less than the amount billed based on the 90th percentile amount in the FH RV Benchmark Database, Progressive sent Dr. Folweiler an Explanation of Benefits form ("EOB") similar to the form attached as **Exhibit A.** The reduction to Dr. Folweiler's bill was referred to on the EOB as a 41 "explanation code" (referred to herein as a "code 41 reduction.")

2.10    In April 2013, for example, , Dr. Folweiler billed Progressive for one unit of a 98942 CPT procedure provided to a Progressive patient at $95 per unit. Progressive paid Dr. Folweiler $91, or $4 less than the amount billed based on an Explanation Code 41 and sent him the EOB attached as **Exhibit A**.

2.11    An Explanation Code 41 is defined in the EOB as meaning for "Dates of Service 5/31/11 and prior, the amount allowed is based on benchmark data provided by Ingenix. As of Dates of Service 6/1/11 and greater, the amount allowed was reviewed using the FH RV Benchmark Database." See **Exhibit A** at page 2 of 2.

2.12     Over the period from at least June 1, 2011 through December 31, 2013, FAIR Health licensed its databases including the "FH RV Benchmark Database" for use by Mitchell Medical ("Mitchell") and by the Progressive Max Insurance Company, Progressive Northwestern Insurance Company, Progressive Casualty insurance Company and/or the Progressive Group of Insurance Companies ("Progressive") to audit, review, process, limit and pay medical expense bills submitted by Washington health care providers under the Personal Injury Protection ("PIP") coverage in Progressive's policies sold in Washington.

2.13    FH expected and knew that bill auditors, like Mitchell, and insurers, like Progressive, would use and rely on the FH database to pay health care providers in Washington under medical expense or PIP insurance coverage.

2.14    FH was established in October 2009 as part of a settlement of an investigation by the New York State Attorney General into the use of the Ingenix database by health insurers to pay health care providers on insurance claims.

CLASS ACTION COMPLAINT - 3

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.15     Some of the flaws the New York Attorney General found with the Ingenix data base included:

a.      That it does not determine the numbers or types of providers in any geographic area;

b.      That it does not determine the actual types of procedures within a geographic area;

c.      That it collects charge data which is not representative of the actual number of procedures performed within a geographic area;

d.      That it does not collect sufficient data to enable its users to determine whether the data reflects the charges of providers with any particular degree of expertise or specialization;

e.      That it does not collect sufficient provider-specific data to enable its users to determine whether the charges are from one provider, from several providers, or from only a minority or specific subset of the providers in a geographic area;

f.      That it fails to compare providers of the same or similar training and charges by procedure code without even separating the charges of physicians and non-physicians;

g.      That it does not collect patient specific information such as age or medical history or condition;

h.      That it does not ascertain the most common charge for the same service or comparable service or supply;

i.      That it does not determine the place of service or type of facility;

j.      That it does not collect sufficient data to enable it or its users to determine an appropriate medical market for comparing like charges;

k.      That it combines zip codes inappropriately, and uses zip codes instead of appropriate medical markets;

l.      That it fails to compare procedures that use the same or similar resources (and other costs) to the provider but, rather, indiscriminately combines all provider charges by procedure code without regard to such factors;

m.      That it fails to compare procedures of the same or similar complexity by, among other things, failing to record or account for CPT code modifiers;

n.      That it does not use an appropriate statistical methodology;

o.      That it does not properly consider charging protocols and billing practices generally accepted by the medical community or specialty groups;

p.      That it does not properly consider medical costs in setting geographic areas;

CLASS ACTION COMPLAINT - 4

q.    That it lacks quality control, such as basic auditing, to ensure the validity, completeness, representativeness, and authenticity of the data submitted;

r.    That it is subject to pre-editing by data contributors;

s.    That it reports charges that are systemically skewed downward; and

t.    That it uses relative values and conversion factors to derive inappropriate "usual and customary" amounts.

2.16    The New Attorney General concluded that because of data collection, methodological and statistical flaws the "prevailing rates" Ingenix generated for physician services in New York were as much as 30% lower than the actual market rates for these services.

2.17    In addition to the investigation by the New York Attorney General, the staff of the U.S. Senate Commerce Committee conducted a nationwide investigation into how the insurance industry pays benefits to consumers who purchase "out-of-network" health insurance coverage.

2.18    In the course of this investigation, the Committee's staff found that in every region of the United States, health insurance companies had been using two faulty database products owned by Ingenix, Inc. to under-pay millions of valid insurance claims.

2.19    The Staff further found that the reliability of the Ingenix data was fatally undermined by faulty statistical methods and a fundamental conflict of interest

2.20    As part of the settlement with the New York Attorney General, the owner of the Ingenix database agreed to stop licensing the database for use in paying health care provider bills submitted under insurance policies

2.21    After its inception in October 2009 and prior to March 31, 2011, FH acquired the data contained in the Ingenix MDR database and/or acquired the Ingenix MDR database itself (referred to collectively herein as the "Ingenix database").

2.22    FH was formed in material and significant part to manage, improve and expand the Ingenix database that supported claims adjudication by insurance companies who pay health care provider bills under their insurance policies and/or insurance plans.

CLASS ACTION COMPLAINT - 5

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.23    FH was also formed in material and significant part to enhance the Ingenix database's transparency, objectivity, reliability and accessibility.

2.24    Before March 31, 2011, FH changed or modified the Ingenix database.

2.25    FH "rebranded" or renamed the changed or modified version of the Ingenix database as the "FAIR Health" database. FH then marked the new FAIR Health database to insurers and bill auditors for use in auditing and paying health care provider bills.

2.26    One of the modified Ingenix databases that FH modified and renamed was called the "FH RV Benchmark Database" by FH.

2.27    Prior to March 31, 2011, FH marketed and licensed to medical bill auditors, like Mitchell, and insurers who pay health care provider bills, like Progressive, the FH RV Benchmark Database for use in paying health care provider bills.

2.28    FH marketed its database as more transparent, objective, reliable and accessible than the Ingenix database previously used by bill auditors, like Mitchell, and insurers, like Progressive, to review and pay health care provider bills on insurance claims.

2.29    However, the FH RV Benchmark Database had many of the same types of flaws, criticisms and/or limitations identified in the prior investigations conducted by the New York Attorney General and/or the U.S. Senate Commerce Committed described in ¶ 2.15 above.

2.30    During the period from June 1, 2011 to December 31, 2013, FH licensed the FH RV Benchmark Database to Mitchell and Progressive for use in auditing, reviewing and paying provider bills submitted on PIP insurance claims, including bills submitted by Washington providers. FH did not disclosed the flaws, criticisms and/or limitations of the FH RV Benchmark Database referenced in in ¶ 2.29 to Washington providers.

2.31    Prior to March 31, 2011, FH met with representatives of the health insurance industry and/or health insurance companies that had used the Ingenix database to discuss FH's new databases and/or planned changes and/or modifications to the Ingenix database.

2.32    During one or more of these meetings,  representatives of the insurance industry or insurance companies stated in words or substance that insurers would not license and/or use the

CLASS ACTION COMPLAINT - 6

1    FH database if it significantly or substantially increased the amount of their payments to health

2    care providers on insurance claims compared to amount paid using the Ingenix database.

3        2.33    In response, FH agreed in words or substance that it would not make changes and

4    modifications to the Ingenix database that would result in insurers having to pay substantially

5    more in health care provider costs than compared to using the Ingenix database.

6        2.34    Since the meetings described in ¶2.31-.32 above, the FH RV Benchmark Database

7    has been widely used by insurers to pay health care providers under their plans or policies.

8        2.35    Mitchell and Progressive used the FH RV Benchmark Database from June 1, 2011

9    to December 31, 2013 to reduce Washington provider payments on Progressive PIP claims.

10       2.36    During the period from June 1, 2011 to December 31, 2013, FH knew and expected

11   that insurers who paid health care provider bills, like Progressive, would use the FH database to

12   reduce provider reimbursements on insurance claims.

13       2.37    FH knew or should have known that insurers who paid health care provider bills,

14   like Progressive, would use the FH database in the same manner as the Ingenix database.

15       2.38    FH knew or should have known that auto insurers who paid health care provider

16   bills, like Progressive, would use the FH database to avoid and evade the insurer's duty to pay

17   reasonable medical expense bills submitted by health care providers under the insurer's policy.

### CLASS ALLEGATIONS

19       2.39    Plaintiff incorporates by this reference each allegation contained in paragraphs 1.1

20   to 2.38 above as if fully set forth.

21       2.40    Over the period from June 1, 2011 to December 31, 2013, Mitchell and Progressive

22   reduced Washington provider bills submitted under Progressive PIP policies using code 41

23   reductions. The Code 41 reductions were based on Mitchell and Progressive's use of a percentile

24   of the "FH RV Benchmark Database" to limit the reimbursement amount even though the amount

25   billed was a reasonable amount for the service provided. This was a common practice applied to

26   all bills submitted for payment under a Progressive PIP policy.

     2.41    The explanation code 41 reductions were made automatically by a computer.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

2.42    The reduced amount was subsequently paid by Progressive without regard for the Washington health care provider's background, years of practice, credentials, overhead costs, reputation or any other individual characteristics or circumstance.

2.43    Over the period from June 1, 2010 to December 31, 2013, FH knew and expected that Mitchell and Progressive would rely on the FH database to pay Washington provider bills.

2.44    Over the period from June 1, 2011 to December 31, 2013, FH actively aided, assisted, aided and abetted Progressive's effort to avoid having to pay all reasonable medical expense bills submitted by Washington providers as required by the Washington PIP statute though the licensing of the FH RV Benchmark Database to Mitchell and/or Progressive.

2.45    FH knew during this time period that the FH RV Benchmark Database had similar flaws and/or limitations as the Ingenix database but that Mitchell and Progressive would use the FH database in the same manner as they had used the Ingenix database to limit insurance payments to health care providers.

2.46    Over the period from June 1, 2011 to December 31, 2013, there were about 3,000 Washington health care providers whose bills were reduced based on a Code 41 reduction on a Progressive EOB. The providers were geographically dispersed over Washington and provided services to patients in various counties of the state.

2.47    The individual claim of the 3,000 providers relating to Code 41 reductions during the period from June 1, 2011 to December 31, 2013 averages less than $300.

2.48    Dr. Folweiler brings this action as a Class Action under Civil Rule 23 of the Washington State Superior Court Civil Rules on behalf of the following Class:

> All Washington health care providers who from June 1, 2011 through December 31, 2013 had their PIP claims for reimbursement of reasonable medical expenses reduced by a Progressive insurance company based solely on a code 41 explanation code which involved the use of the FAIR Health RV Benchmark Database.

2.49    Class certification is proper under CR 23(a) (1) because the members of the class total approximately 3,000 health care providers who are geographically dispersed over numerous cities and counties in the state of Washington.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.50    Because of the large number of Class members and their geographic dispersion, individual joinder of each putative class member is not practicable.

2.51    Plaintiff Folweiler and the Class allege that FH's practice of marketing and licensing its database for use by Mitchell and Progressive to make code 41 reductions to Washington provider bills submitted under Progressive's PIP policy from June 1, 2011 to December 31, 2013 was a deceptive and/or unfair business practice under the Washington Consumer Protection Act, RCW 19.86 et seq..

2.52    It was a deceptive and/or unfair practice because of FH knew of the defects, flaws and limitations relating to the FH database that were similar to the flaws, limitations and criticisms relating to the Ingenix database. FH knew that its database would be used in the same manner as the Ingenix database and that insurers like Progressive would use the database to avoid or evade the insurer's obligation to pay reasonable medical bills. FH knew or should have known that insurers, like Progressive would use its database in the same manner as the Ingenix database to avoid or evade the insurer's duty to implement reasonable investigation procedures concerning medical expense claims and the insurer's duty to reasonably investigate such claims.  FH assisted, aided and abetted the insurer's avoidance or evasion of its obligations by licensing its database for use by the insurer, in this case Progressive, or its bill auditor, in this case Mitchell. FH also failed to disclose to Washington providers whose bills were submitted to Progressive the flaws and limitations relating to its database that were similar to those of the Ingenix database

2.53    FH's practice of marketing and licensing its database for use by insurers like Progressive and their bill auditors, like Mitchell, caused injury to the business and property of Washington health care providers whose bills were reduced by Progressive based on a code 41 explanation code reduction and the use of the FH database to make such reductions.  "But for" FH's practice of marketing and licensing its RV Benchmark Database to Mitchell and Progressive, Mitchell and Progressive would not have been able to use the FH database to reduce Washington health care provider bills using code 41 reductions.

CLASS ACTION COMPLAINT - 9

2.54    Class Certification under CR 23(a)(2) is proper because Dr. Folweiler's claims and those of the Class of Washington providers whose bills were reduced based on Progressive's use of the FH database to deny full payment under Progressive's PIP coverage involves a common practice that was applied to the bills of all Class members. The claims raise common factual and legal questions including:

a.      Whether the FH database had similar flaws and limitations as the Ingenix database.

b.      Whether FH marketed and licensed its database for use by insurers and their bill auditors knowing that the database had similar flaws and limitations as the Ingenix database.

c.      Whether FH knew and/or should have known that the insurers like Progressive and bill auditors like Mitchell would use the FH database in the same manner as the Ingenix database to reduce provider reimbursements under the insurer's policy.

d.      Whether FH knew or should have known that by licensing a flawed and limited database to insurers like Progressive and/or their bill auditors, like Mitchell, FH was assisting, aiding and abetting the insurers to avoid or evade their obligation to pay all reasonable medical expense bills submitted under their insurance policy.

e.      Whether FH knew or should have known that by licensing a flawed and limited database to insurers like Progressive and/or their bill auditors, like Mitchell, FH was assisting, aiding and abetting the insurers in avoiding or evading their obligation to implement reasonable procedures for investigating medical expense claims and to reasonably investigate such claims before denying full payment of the claim.

f.      Whether FH's practice was an unfair or deceptive business practice that violated the Washington Consumer Protection Act.

g.      Whether FH's practice was a proximate cause of injury to the business or property of Washington providers who submitted medical expense bills to Progressive for payment under its PIP coverage through Progressive's use of the FH database to reduce provider payments

2.55    Class certification is proper under CR 23(a)(3) because Dr. Folweiler's claims are typical of the claims of the Washington providers whose bills were also reduced by Progressive

CLASS ACTION COMPLAINT - 10

based on the use of the FH database. FH's defenses to the claims of Dr. Folweiler are typical of the defenses to the claims of the other Washington providers whose bills were reduced by Progressive through the use of the FH database.

2.56    Class certification is proper under CR 23(a)(4) because Dr. Folweiler can fairly and adequately represent the interests of the other members of the Washington health care provider Class. Dr.Folweiler and the members of the Class have the same interest in not having their bills reduced through the use of a defective, flawed and limited FH database and in being paid in full for their services by Progressive.  Dr. Folweiler has retained skilled attorneys who have successfully prosecuted similar class actions PIP cases that raised similar claims and issues.

2.57    Class certification is proper under CR 23(b)(3) because the questions of law and fact common to the class, as set forth above in paragraph 2.54 predominate over questions affecting only individual members of the class.  Common questions predominate because FH's database was used to reduce the bills of all Class members in the same way by Progressive.

2.58    Class certification is proper under CR 23(b)(3) because a class action is a superior method for adjudicating the claims of the members of the Class than hundreds of individual actions in numerous cities and counties of Washington that raise the identical factual and legal issues concerning the FH database and Progressive's use of the FH database to make code 41 reductions to Washington provider bills under Progressive's PIP policy.

2.59    A class action is a superior method of adjudicating the Class claims because the claims of the individual class members are likely to be small. The average claim, including Plaintiff Folweiler's individual claim, is likely less than $300. Because of the expense and amount of time necessary to adjudicate the claims on an individual basis, providers who are members of the Class would have little interest in individually controlling the prosecution of their claims.

2.60    A class action is a superior method of adjudicating the claims because there is no significant individual litigation already commenced by Washington health care providers against Fair Health raising the same claims.

CLASS ACTION COMPLAINT - 11

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2.61    A class action is a superior method of adjudicating the claims because it is desirable to concentrate the litigation and claims in a single forum to avoid duplicity of actions and inconsistent adjudications of identical claims. King County is a desirable forum for litigation of the Class claims because most Class members are located in King County. The cost to the court system of individualized litigation in the Superior Court of multiple counties would be substantial.

2.62    A class action is a superior method of adjudicating the claims because there are few difficulties likely to be encountered in the adjudication of the Class claim.

2.63    A similar Class action involving Progressive's use of the Ingenix database to reduce Washington provider bills through code 41 reductions went to trial before a King County jury in August 2012. The jury returned a verdict for the Plaintiffs and the certified Class of Washington health care providers in less than one hour. The jury found that Progressive's practice of reducing PIP payments to the 90th percentile of the Ingenix database was an unfair practice that violated the Washington Consumer Protection Act and caused injury to the business and/or property of the Plaintiffs and Class of providers.

## III.    LEGAL CLAIMS

### A.    Violation of the Washington Consumer Protection Act

3.1    Plaintiffs re-allege each and every allegation as set forth in paragraphs 1.1 to 2.63 above as through set forth here.

3.2    FH's practice of marketing and licensing its defective, flawed and limited database for use by Mitchell and Progressive to make code 41 reductions to Washington provider bills submitted under Progressive's PIP insurance coverage over the period from June 1, 2011 to December 31, 2013 was a deceptive and/or unfair business practice under the Washington Consumer Protection Act, RCW 19.86 et seq..

3.3    It was a deceptive and/or unfair practice because of FH knew of the defects, flaws and limitations relating to the FH database that were similar to the flaws, limitations and criticisms relating to the Ingenix database.  FH failed to disclose to Washington providers these defects, flaws and limitations.

CLASS ACTION COMPLAINT - 12

3.4     FH's practice was unfair because FH  knew that its database would be used in a manner similar to the Ingenix database and that insurers would use the database to avoid or evade the insurer's obligation to pay reasonable medical bills and the insurers' obligations to implement reasonable investigation procedures concerning medical expense claims and to reasonably investigate medical expense claims before denying payment in full.

3.5     FH assisted, aided and abetted Progressive's avoidance or evasion of its obligations under Washington law by licensing its database for use by Progressive or its bill auditor.

3.6     FH's practice of marketing and licensing its database for use by insurers like Progressive and their bill auditors, like Mitchell, caused injury to the business and property of Washington health care providers whose bills were reduced by Progressive based on code 41 explanation code reductions and the use of the FH database.

3.7     There were no benefits for Washington providers who submitted bills to Progressive under Progressive's PIP policy from FH's practice. Any alleged benefit was substantially outweighed by the injury to the business and property of Washington providers whose bills were reduced by Progressive's use of the FH database to make code 41 reductions.

3.8     Washington providers could not avoid the impact of FH's practices through the use of reasonable diligence when submitting their Progressive patient's bill to Progressive for payment because Progressive and Mitchell used the FH database to audit and review all bills submitted on PIP claims in Washington. Progressive used the FH database to make the code 41 reductions to the bills of all members of the Washington provider Class.

3.9.     FH's practice was an unfair CPA practice in relationship to Progressive's obligations under the Washington PIP statute and WAC regulations relating to unfair claims handling practices.

3.10    The business of insurance affects the public interest in Washington. Unfair or deceptive practices in the business of insurance, including in the auditing, review, investigation and payment of insurance claims affects the public interest.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

## IV. DAMAGES

2      4.1    Plaintiff re-alleges and incorporates by this reference as if fully set forth each of the

3 allegations in paragraphs 1.1 to 3.10 above.

4      4.2    As a direct and proximate cause of FH's unfair and deceptive practices that

5 violated the Washington Consumer Protection Act, Plaintiff Folweiler and the alleged Class of

6 Washington health care providers suffered damages in the form of loss income, unfair reductions

7 to their bills due to code 41 reductions and out of pocket expenses associated with time away from

8 their professional practice, as well as the added administrative time and costs incurred as a result

9 of Progressive's reduction of their bills.

10      4.3     Over the alleged Class period from June 1, 2011 to December 31, 2013, the total

11 amount of all Code 41 reductions made to Washington health care provider bills by Progressive

12 through its use of a percentile of the FH database to pay PIP claims was less than $900,000. The

13 total amount of damages was less than $1 million.

14      4.4    The total amount in controversy on the claims of the Putative Class in this action is

15 substantially less than Five Million Dollars ($5,000,000). The maximum amount of all damages,

16 treble or exemplary damages, costs, attorney fees, and/or any other relief awardable under

17 Washington law is less than Five Million Dollars ($5,000,000).

18

## V.      RELIEF REQUESTED

19      Plaintiff Folweiler requests that a judgement be entered against Defendant FAIR Health

20 finding that its complained of practices in connection with the reductions made by Progressive to

21 the bills of Folweiler and the Class as alleged herein were unfair or deceptive business practices

22 that violated the Washington Consumer Protection Act and awarding the following relief:

23      1.    Awarding the Plaintiff and the Class of Washington health care providers their

24 actual damages as permitted by the Washington Consumer Protection Act, RCW 19.86 et seq.;

25      2.    Awarding the Plaintiff and the Class of Washington health care providers treble

26 damages as permitted by the Washington Consumer Protection Act, RCW 19.86 et seq.;

CLASS ACTION COMPLAINT - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

    3.     Awarding the Plaintiff and the Class of Washington health care providers prejudgment interest on their damages at 12% per annum as permitted by the Washington Consumer Protection Act, RCW 19.86 et seq., or at such other rate permitted by law;

    4.     Awarding the Plaintiff and the Class of Washington health care providers their reasonable attorney fees and costs as permitted by the Washington Consumer Protection Act, RCW 19.86 et seq.;

    5.     Awarding Plaintiff and the Class of Washington health care providers their statutory fees and costs permitted by law; and

    6.     Awarding Plaintiff and the Class of Washington health care providers such further or additional relief permitted by law or that the court finds just and equitable.

Dated May 29, 2015:


BRESKIN JOHNSON & TOWNSEND, PLLC

By:  _s/ David E. Breskin_
     David E. Breskin, WSBA # 10607
     1000 Second Avenue, Suite 3670
     Seattle, WA 98101
     (206) 652-8660 Fax (206) 652-8290
     dbreskin@bjtlegal.com

CLASS ACTION COMPLAINT - 15

EXHIBIT A

PROGRESSIVE®

PROGRESSIVE
P.O. BOX 512916
LOS ANGELES, CA 90051

**Underwritten By:**
PROGRESSIVE MAX INSURANCE
COMPANY

**Recipient:**
FOLWEILER CHIROPRACTIC PS
10564 5TH AVE NE STE 202
SEATTLE, WA 98125-7200

Document Date: July 7, 2013
Claim Number: 13 441 4181
Date of Loss: March 31, 2013
**Policyholder:**
State of Jurisdiction: WA
Coverage Type: PERSONAL INJURY PROTECTION
Date Received: June 12, 2013
Bill Number: 29270375
Provider Invoice Number: 2274C1P1
Progressive Invoice Number: 10084508
Payment Number: 2004564564

Received

JUL 12 2013

Folweiler Chiropractic

**Patient:**

**Provider Information:**
FOLWEILER CHIROPRACTIC
10564 5TH AVE NE STE 202
SEATTLE, WA 98125

Specialty: CHIROPRACTICS
Zip of Service: 98125
Region: 981
Date(s) of Service: 04/01/2013 - 04/01/2013
Page 1 of 2

# Explanation of Benefits

**ICD Diagnosis Codes:**

| | |
|---|---|
| 847.0 | NECK SPRAIN |
| 847.1 | THORACIC SPRAIN |
| 739.1 | NONALLOPATHIC LESIONS OF CERVICAL REGION, NOT ELSEWHERE CLASSIFIED |
| 739.2 | NONALLOPATHIC LESIONS OF THORACIC REGION, NOT ELSEWHERE CLASSIFIED |
| 739.3 | NONALLOPATHIC LESIONS OF LUMBAR REGION, NOT ELSEWHERE CLASSIFIED |
| 739.4 | NONALLOPATHIC LESIONS OF SACRAL REGION, NOT ELSEWHERE CLASSIFIED |
| 739.5 | NONALLOPATHIC LESIONS OF PELVIC REGION, NOT ELSEWHERE CLASSIFIED |

**ICD Procedure Codes:**

| Date of Service | Line | Revenue Code | Place of Service | Procedure Code | Modifier | Units | Amount Charged | Amount Allowed | Explanation Codes |
|---|---|---|---|---|---|---|---|---|---|
| 04/01/2013 | 1 | | 11 | 99203 | 25 | 1 | $250.00 | $250.00 | 166 |
| 04/01/2013 | 2 | | 11 | 98942 | | 1 | $95.00 | $91.00 | 41 |
| Subtotals | | | | | | | $345.00 | $341.00 | |
| Amt Previously Paid | | | | | | | | ($250.00) | |
| Deductible/Co-Pay | | | | | | | | $0.00 | |
| Totals | | | | | | | $345.00 | $91.00 | |

Revenue Code:

Place of Service:
11 - Office

Procedure Code:

CPT Five Digit Codes and/or nomenclature are Copyright 1995-2011 American Medical Association. All Rights Reserved.



Claim Number: 13-224141B1
Policyholder:
Page 2 of 2

99203   -Office or other outpatient visit for the evaluation and management of a new patient, which requires these 3 key components: A detailed history; A detailed examination; Medical decision making of low complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of moderate severity. Typically, 30 minutes are spent face-to-face with the patient and/or family.

98942   -Chiropractic manipulative treatment (CMT); spinal, 5 regions

Modifier:

25 - Significant, separately identifiable E/M by the same physician on the same day of procedure/service.

Explanation Code:

166   -The provider has used modifier 25 to identify that on this date of service, the patients condition required a significant, separately identifiable E/M service above and beyond the other service provided or beyond the usual preoperative and postoperative care associated with the procedure that was performed.

41   -Dates of Service 5/31/11 and prior, the amount allowed is based on benchmark data provided by Ingenix. As of Dates of Service 6/1/11 and greater, the amount allowed was reviewed using the FH RV Benchmark Database.

Additional Comments:

REGIONS ADJUSTED MUST BE CLEARLY NOTED AS TREATED WITH CHIROPRACTIC MANIPULATIVE TREATMENT FOR FULL PAYMENT CONSIDERATION.

Important Information:

**It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.**

This explanation details what we have determined to be the appropriate reimbursement amount based on our careful review of this claim and the bill(s) and record(s) as submitted. Please note that if additional documentation and/or information have been requested, payment of the outstanding charge(s) is pending until we have received and reviewed the requested item(s). Should you disagree with the handling of these charges or have any questions, please contact the claims representative listed below. Otherwise, we will assume you have accepted our handling under the terms of this explanation.

SHELARIFE SILVA,
Claims Department
1-800-806-2088

Enclosure

Form 2740.7.10.79

CPT Five Digit Codes and/or nomenclature are Copyright 1995-2011 American Medical Association. All Rights Reserved.

1                                                        Honorable William Downing

2

3

4

5

6

7

8

9                    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                            IN AND FOR THE COUNTY OF KING

10   FOLWEILER CHIROPRACTIC, PS, a            NO. 15-2-13107-9 SEA
     Washington professional services corporation,
11                                            **PLAINTIFF'S FIFTH
12                   Plaintiffs,              INTERROGATORIES AND REQUESTS
           vs.                                FOR PRODUCTION**
13
     FAIR HEALTH, INC., a New York Corporation,
14
                     Defendant.
15

16   TO:   Fair Health, Inc., Defendant

17         Plaintiff Folweiler Chiropractic, PS ("Plaintiff") hereby propounds the following request for

18   production of documents pursuant to CR 26 and 34. The requested documents should be produced

19   for inspection and copying at the offices of Breskin Johnson and Townsend, 1000 Second Avenue,

20   Suite 3670, Seattle, Washington 98104 within 30 days after the date of service. You should respond

21   to each discovery question in accordance with the instructions and definitions set forth below. The

22   requests for production are continuing in nature within the meaning of CR 26.

23                              **I.   INSTRUCTIONS**

24         Space for your answers has been provided after each interrogatory. If the space provided is

25   not sufficient, please attach additional pages to the page on which the answer is set forth.

26

1         (b)    when used with respect to a person other than a natural person, means to state

2 its full name, the present or last known address of its principal office or place of doing business, and

3 the type of entity (e.g., corporation, partnership, unincorporated association) such person is;

4         (c)    when used with a document, means to state its author, signer, and sender; and

5 its addressees and recipients; and, where not apparent, the relationship of the author, signer, sender,

6 addressee and any other recipient to each other; state the document's title, date, and number of

7 pages; describe its subject matter; and state its present location and the name and address of any

8 person presently having custody or control thereof, and any other descriptive information necessary

9 to identify each document sufficiently in a subpoena duces tecum or request for production.  As an

10 alternative, you may produce a copy of the document.

11         **III.**    **INTERROGATORIES**

12     **INTERROGATORY NO. 1:** State the date and describe the manner in which you first

13 became aware of the verdict or judgment in the <u>Kerbs v. Progressive</u> case and identify the persons

14 providing that information and the persons at FH who received that knowledge and when.

15     **ANSWER:**

16

17     **INTERROGATORY NO. 2:** Identify all consultants who worked with FH over the period

18 from January 1, 2010 to December 31, 2013 (whether compensated or not) relating to the creation,

19 development, modification or improvement of the FAIR Health databases and/or relating to FH's

20 communications about the FAIR Health databases with health insurers or other payers of health care

21 providers, including but not limited to consultant David Boston and/or employees of the Boston

22 Consulting Group.  For each such person state their name, address, phone number, employer, the

23 period of time that they work with FH and a description of their activities working with FH.

24     **ANSWER:**

25

26

1    **IV.    REQUEST FOR PRODUCTION OF DOCUMENTS**

2    **REQUEST FOR PRODUCTION NO. 1:**  Produce any communication in which you affirmatively

3    told or directed Mitchell International in words or substance to inform their customers that the data

4    provided by Fair Health databases or product modules should only be used for informational

5    purposes and not to set a maximum fee schedule for payment of health care provider bills.

6         **RESPONSE:**

7

8

9         **REQUEST FOR PRODUCTION NO. 2:**  Produce any communication in which you

10   affirmatively told or directed Auto Injury Solutions or Concentra in words or substance to inform

11   their customers that the data provided by FH databases or product modules should only be used for

12   informational purposes and not to set a maximum fee schedule for payment of provider bills

13        **RESPONSE:**

14

15

16        **REQUEST FOR PRODUCTION NO. 3:**  Produce any communication in which you

17   affirmatively told or directed CorVel in words or substance to inform their customers that the data

18   provided by Fair Health databases or product modules should only be used for informational

19   purposes and not to set a maximum fee schedule for payment of health care provider bills.

20        **RESPONSE:**

21

22

23        **REQUEST FOR PRODUCTION NO. 4:**  Produce the FH RV Benchmark database as it

24   existed on June 1, 2011, on December 31, 2013 and on July 22, 2014.

25        **RESPONSE:**

26

1    **REQUEST FOR PRODUCTION NO. 5:**  Produce any and all documents relating to Dr.
2    Stephen Foreman, Ph.D., including but not limited to any agreements, email, memorandum, notes
3    or other documents in which Dr. Foreman's name appears and/or any documents that reflect
4    meetings which Dr. Foreman attended with officers, employees or representatives of FH.
5        **RESPONSE:**

6

7

8    **REQUEST FOR PRODUCTION NO. 6:**  Produce any and all documents relating to
9    Robert Parke, Principal & Consulting Actuary, Milliman, Inc., and/or communications with
10   Milliman relating to the FAIR Health database.
11       **RESPONSE:**

12

13

14   **REQUEST FOR PRODUCTION NO. 7:**  Produce a true, correct and complete copy of
15   any communications between FH and any Hartford insurance company, Hartford Accident and
16   Indemnity Company, Harford Casualty Insurance Company, Hartford Insurance Company of the
17   Midwest, Hartford Life and Accident Company, Hartford Underwriters Insurance Company,
18   Property and Casualty Insurance Company of Hartford, Sentinel Insurance Company, Trumbull
19   Insurance Company, and Twin City Fire Insurance Company, including any communication of any
20   nature that provided Hartford guidance on the use of the FH database modules or products and/or
21   stated in words or substance any of the information contained in paragraph 2 on page 2 of 48 of the
22   FH Benchmarks User Guide attached as Exhibit A and/or stated in words or substance that the data
23   provided in the FAIR Health produce modules, should be used only for informational purposes
24   consistent with the terms of the client's license to use such data; and/or stated in words or substance
25   that FAIR Health is not determining, developing or establishing an appropriate fee or
26   reimbursement levels for client or its business and/or stated in words or substance that the 90th

1  for any CPT procedure does not mean that 90%, or 80% or other percentile of all providers in the

2  area charge that percentile amount or less for the sane CPT procedure. The pages contained in

3  Exhibit A were part of the User Guide. Ex. 6 to the 11/04/15 CR 30(b)(6) deposition of FH.

4      **RESPONSE:**

5

6

7

8

9      DATED this 29th day of February, 2016.

10                                    BRESKIN JOHNSON & TOWNSEND, PLLC

11

12     By: _s/ David E. Breskin_
                                    David E. Breskin, WSBA #10607
13                                   1000 Second Avenue, Suite 3670
                                    Seattle, WA  98104
14                                   (206) 652-8660 Telephone
                                    (206) 652-8290 Facsimile
15                                   dbreskin@bjtlegal.com
                                    _Attorneys for Plaintiff_
16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S FIFTH INTERROGATORIES AND
REQUESTS FOR PRODUCTION - 9

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Honorable William Downing

1
2
3
4
5
6
7
8

**IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

9
10

FOLWEILER CHIROPRACTIC, PS, a
Washington professional services corporation,

11

Plaintiff,

12

v.

13
14

FAIR HEALTH, INC., a New York
Corporation,

15

Defendant.

No.: 15-2-13107-9 SEA

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S FIRST SET OF
INTERROGATORIES AND REQUESTS
FOR PRODUCTION OF DOCUMENTS**

16    Plaintiff Folweiler Chiropractic, PS ("Plaintiff") responses to Fair Health Inc.'s

17    ("Defendant") First Set of Interrogatories and Requests for Production of Documents, as follows:

18    **INTERROGATORIES**

19    **INTERROGATORY NO. 1:** State each and every fact and identify any other

20    information upon which the following statement from ¶ 2.29 of your Complaint is based: "The

21    FH RV Benchmark Database had many of the same types of flaws, criticisms and/or limitations

22    identified in the prior investigations conducted by the New York Attorney General and/or the

23    U.S. Senate Commerce Committee described in ¶ 2.15 above." *Complaint at ¶ 2.29.*

24    **ANSWER:** Plaintiff objects to the interrogatory. Its scope is overly broad, unduly

25    burdensome and impossible to respond to with respect to demanding "each and every fact and

26

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1   any other information." Within a reasonable scope of inquiry and without waiving the objection,

2   Plaintiff directs Defendant's attention to **Attachment A, Attachment J, and Attachment K.**

3

4       **INTERROGATORY NO. 2:**    State each and every fact and identify any other

5   information upon which the following statements from ¶¶ 2.31, 2.32 and 2.33 of your Complaint

6   dated are based: "Prior to March 31, 2011 FH met with representatives of the health industry

7   and/or health insurance companies that had used the Ingenix database to discuss FAIR Health's

8   new databases and/or planned changed and/or modifications to the Ingenix database. During one

9   or more of these meetings, representatives of the insurance industry or insurance companies

10  stated in words or substance that insurers would not license and/or use the FAIR Health database

11  if it significantly or substantially increased the amount of their payments to health care providers

12  on insurance claims compared to amount paid using the Ingenix database. In response, FAIR

13  Health agreed in words or substance that it would not make changes and modifications to the

14  Ingenix database that would result in insurers having to pay substantially more in health care

15  provider costs than compared to using the Ingenix database." *Complaint at ¶¶ 2.31-2.33.*

16      **ANSWER:**  Plaintiff objects to the interrogatory. Its scope is overly broad, unduly

17  burdensome and impossible to respond to with respect to demanding "each and every fact and

18  any other information." Within a reasonable scope of inquiry and without waiving the objection,

19  Plaintiff states that Dr. Stephen Foreman was told this by Ms. Gelburd.

20

21      **INTERROGATORY NO. 3:**    State each and every fact and identify any other

22  information upon which the following statement from ¶ 2.45 of your Complaint is based: "FAIR

23  Health knew during this time period [June 1, 2011 to December 31, 2013] that the FH RV

24  Benchmark Database had similar flaws and/or limitations as the Ingenix database but that

25

26

1   work product doctrine.  Within a reasonable scope of inquiry and without waiving these

2   objections, Plaintiff directs Defendant's attention to **Attachment A** and Davis Deposition

3   exhibits 4, 6, 7, 8, 9, 13, and 14.  In addition, see answers to Interrogatory nos. 2 and 4

4   **Attachment J** and **Attachment K**.

5

6          **REQUEST FOR PRODUCTION NO. 7:**  Produce each and every document from

7   *Kerbs v. Progressive* that relates to Plaintiff's contention in page 4 of its Answer to Motion for

8   Discretionary Review that a jury in that case found that the Ingenix database was flawed.

9          **RESPONSE:**  Plaintiff objects to the Request for Production.  Its scope is overly broad,

10  unduly burdensome and impossible to respond to with respect to demanding "each and every

11  document."  Plaintiff further objects because the information is easily accessible by Defendant

12  and because Plaintiff has no personal knowledge of the documents the jury relied upon to find

13  the Ingenix database was flawed.  Without waiving these objections, Plaintiff states that

14  information about the *Kerbs v. Progressive* case is a matter of public record and can be as easily

15  obtained by Defendant as Plaintiff.

16

17         **REQUEST FOR PRODUCTION NO. 8:**  Produce all communications by and between

18  Plaintiff and/or its attorneys, and Stephen Foreman.

19         **RESPONSE:** Plaintiff objects to the Request for Production.  Its scope is overly broad,

20  unduly burdensome and impossible to respond to with respect to demanding "all

21  communications" without limitation.  Plaintiff further objects because this request includes

22  information that is not relevant to the claims at issue or from a time not related to the time period

23  of this case.  Plaintiff further objects because the request seeks attorney work product

24  information and because the request seeks impermissible disclosure of consulting expert.

25

26

PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION
OF DOCUMENTS - 19
No.: 15-2-13107-9 SEA

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1    **REQUEST FOR PRODUCTION NO. 9:**  Produce each and every document

2  evidencing, reflecting or concerning Plaintiffs' calculation of damages.

3    **RESPONSE:** Plaintiff objects to the Request for Production.  Its scope is overly broad,

4  unduly burdensome and impossible to respond to with respect to demanding "each and every

5  document."  Without waiving these objections, Plaintiff responds as follows: the total amount of

6  damages has not yet been determined.  In addition, see Plaintiff's answer to Interrogatory Nos. 7

7  and 8, **Attachment B**, **Attachment G**, **Attachment I**, and Davis Deposition Exhibit 15.

8

9    **REQUEST FOR PRODUCTION NO. 10:**  Produce each and every document that

10  relates to the allegation in ¶ 2.6 of your Complaint that: "The amount Dr. Folweiler billed for

11  treatment provided was reasonable for Dr. Folweiler's services."

12    **RESPONSE:** Plaintiff objects to the Request for Production.  Its scope is overly broad,

13  unduly burdensome and impossible to respond to with respect to demanding "each and every

14  document."  Without waiving these objections, Plaintiff directs Defendant to the answer to

15  Interrogatory Nos. 7 and 8 and specifically to the trial transcript in *Kerbs v. Progressive Ins. Co.*

16  *N.W.*, including trial testimony from Pemco Ins. Co.  In addition, see **Attachment B**,

17  **Attachment C**, **Attachment F**, **Attachment G**, **Attachment H**, and Davis Deposition Exhibit

18  15.

19

20    **REQUEST FOR PRODUCTION NO. 11:**  Produce each and every document that

21  relates to the allegation in ¶ 2.7 of your Complaint that:  "Over the period from June 1, 2011 to

22  December 31, 2013, when Dr. Folweiler submitted bills to Progressive, his bills were sent to

23  Mitchell Medical to audit, review, process and limit using the 90th percentile of the FH RV

24  Benchmark Database or other FH database."

25

26

PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION
OF DOCUMENTS - 20
No.: 15-2-13107-9 SEA

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1  other correspondence or communication with Progressive or any representative of Progressive,

2  regarding the payment, denial of payment or reduction of such bills, for services rendered during

3  the class period.

4      **RESPONSE:** Plaintiff objects to the Request for Production. Its scope is overly broad,

5  unduly burdensome and impossible to respond to with respect to demanding "each and every

6  document." Within a reasonable scope of inquiry and without waiving these objections, Plaintiff

7  directs Defendant's attention to **Attachment B, Attachment C, Attachment E, and**

8  **Attachment I**. See also, Plaintiff's answer to Interrogatory No. 15.

9

10      **REQUEST FOR PRODUCTION NO. 29:** Produce each and every document not

11  otherwise requested herein that relates to the allegations in Plaintiff's Complaint and/or upon

12  which Plaintiff intends to rely upon at trial.

13      **RESPONSE:** Plaintiff objects to the Request for Production. Its scope is overly broad,

14  unduly burdensome and impossible to respond to with respect to demanding "each and every

15  document." Within a reasonable scope of inquiry and without waiving these objections, Plaintiff

16  directs Defendant's attention to Plaintiff's responses to Request for Production Nos. 1 to 28,

17  above.

18      Dated this 15th day of March 2016.

19                  BRESKIN JOHNSON & TOWNSEND, PLLC

20

21             By:  s/ David Breskin
                David Breskin, WSBA #10607

22                  Brendan W. Donckers, WSBA #39406
                1000 Second Avenue, Suite 3670

23                  Seattle, WA 98104
                (206) 652-8660

24                  dbreskin@bjtlegal.com
                bdonckers@bjtlegal.com

25                  *Attorneys for Plaintiff*

26

PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION
OF DOCUMENTS - 29
No.: 15-2-13107-9 SEA

BRESKIN  JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

Case 1:16-cv-02367-PKC   Document 1-1   Filed 03/30/16   Page 81 of 114

Honorable William Downing

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| FOLWEILER CHIROPRACTIC. PS, a Washington professional services corporation, | NO. 15-2-13107-9 SEA |
| Plaintiff. | EIGHTH AMENDED NOTICE OF 30(b)6 DEPOSITION OF FAIR HEALTH, INC. |
| vs. | |
| FAIR HEALTH, INC., a New York Corporation, | |
| Defendant. | |

## NOTICE OF DEPOSITION

Please take notice that pursuant to CR 30(b)(6), Folweiler Chiropractic. PS, will take the deposition upon oral examination of FAIR Health, Inc. concerning the subject matters listed below. The deposition will be taken on the following date and at the time and location specified and is subject to adjournment and continuance from time to time and place to place, until completed:

     DATE:     Thursday, March 24, 2016

     TIME:     10:00 a.m.

     PLACE:     Ellen Grauer Court Reporting
                    126 East 56th Street. Fifth Floor
                    New York, NY 10022

1    Pursuant to Rule 30(b)(6), Plaintiff requests that FAIR Health, Inc. designate and produce

2    for deposition, a person or persons to testify on its behalf, with the knowledge of the Defendant

3    corporation, on the following subject matters.

4    1.    When, how and why the FAIR Health RV Benchmark Database was first created.

5    2.    The similarity or relationship, if any between, the data used in the Ingenix MDR

6    databases and the FAIR Health databases.

7    3.    The changes if any made to the data collection processes, data validation methods

8    and/or databases themselves over the period from the original creation of the FAIR Health RV

9    Benchmark Database to the present and the reasons for such changes.

10    4.    The licensing of the FAIR Health database for use by automobile insurers,

11    including specifically the Safeco insurance companies, Progressive insurance companies,

12    Hartford insurance companies, Allstate Insurance companies, American Commerce insurance

13    companies and/or MAPFRE insurance companies.

14    5.    The licensing of the FAIR Health database for use by medical bill processing

15    firms, such as Mitchell Medical, Auto Injury Solutions and/or Concentra.

16    6.    The relationship if any between the charge data contained and used in the FAIR

17    Health database relating to Washington state health care providers and the actual charges

18    submitted by Washington providers to all payers, including but not limited to the percentage of

19    all charges in a geographic area for the same CPT procedure represented by the charge data in

20    each version of the FAIR Health database from the original creation of the database to the

21    present and the percentage of all providers who charge for the same CPT procedure in a

22    geographic area out of the total number of all such providers.

23    7.    The validation process if any used by FAIR Health with regard to charge data

24    relating to Washington state health care provider charges, including for example the process used

25    to insure that the charge data for each CPT procedure in the database fairly and accurately

26    representatives the entire range of charges for the same CPT procedure and/or all bills submitted

1   to all payors by Washington providers for the same procedure, and/or all Washington providers

2   who charge for the same CPT procedure in the same geographic area.

3       8.    The compensation paid to FAIR Health by auto insurers and/or bill processing

4   firms, such as those identified in nos. 4 and 5 above, for use of the FAIR Health database.

5       9.    Any discussions, representations, agreements and/or assurances between FAIR

6   Health and any insurer or insurance industry representative that using the FAIR Health database

7   would not significantly increase the amount paid to health care providers on insurance claims  or

8   significantly increase reimbursement costs on health insurance claims compared to using the

9   Ingenix database.

10       DATED this 8th day of February, 2016.

11

12       BRESKIN JOHNSON & TOWNSEND, PLLC

13       By: _s/ David Breskin_
        David Breskin, WSBA #10607

14           1000 Second Avenue, Suite 3670
        Seattle, WA  98104

15           (206) 652-8660 Telephone

16           (206) 652-8290 Facsimile
        dbreskin@bjtlegal.com

17           _Attorneys for Plaintiff_

18

19

20

21

22

23

24

25

26

1

## **CERTIFICATE OF SERVICE**

2          I, Jamie Telegin, under penalty of perjury under the laws of the State of Washington,

3    hereby certify that on this 8th day of February, 2016, I caused the foregoing document to be sent

4    in the manner indicated below, to the following attorneys of record:

5

6          Justo Gonzalez, WSBA #39127                          [X] Via Email
           Joan Hemphill, WSBA #40931

7          Stokes Lawrence
           1420 Fifth Ave. Suite 3000

8          Seattle, WA 98101
           (206) 626-6000Telephone

9          Justo.gonzalez@stokeslaw.com
           Joan.hemphill@stokeslaw.com

10

11         Siobhan E. Moran                                     [X] Via Email
           Moran Karamouzis LLP

12         265 Sunrise Highway, Suite 61
           Rockville Centre, New York 11570

13         (516) 678-6660
           smoran@mka-law.com

14

15                                          /s/ Jamie Telegin
                                            Jamie Telegin, Legal Assistant

16

17

18

19

20

21

22

23

24

25

26

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x

FAIR HEALTH, INC.,                                          Index No. 651473/2016

                Plaintiff,

      - against -

STEPHEN FOREMAN,

                Defendant.

---------------------------------------------------------------x


### PLAINTIFF FAIR HEALTH INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY


**MORAN • KARAMOUZIS LLP**
265 Sunrise Highway, Suite 61
Rockville Centre, New York 11570
(516) 678-6660
(516) 678-6661 (Facsimile)
smoran@mka-law.com
akaramouzis@mka-law.com

Attorneys for Plaintiff
FAIR Health, Inc.

Plaintiff FAIR Health, Inc. ("FAIR Health") respectfully submits this Memorandum of Law in Support of its Motion for a Temporary Restraining Order, Expedited Discovery and a Preliminary Injunction against Defendant Stephen Foreman ("Foreman" or "Defendant").

## I.
## PRELIMINARY STATEMENT

FAIR Health seeks expedited, injunctive relief against Defendant, a former "special expert" and consultant to FAIR Health, to restrain and enjoin his active and continuing, unauthorized use of FAIR Health's Proprietary Information (as that term is defined in the underlying Confidentiality Agreement at issue in this action) in direct violation of the Confidentiality Agreement between the parties. *See* Complaint, dated March 21, 2016 (the "Complaint"), ¶¶ 1, 42-53 and Exhibit A thereto; Affidavit of Thomas F. Swift, Esq., sworn to March 21, 2016 (the "Swift Aff."), ¶¶ 29-41 and Exhibit A thereto.

Last week, after almost a year of protracted, contentious litigation, Plaintiff FAIR Health learned for the first time that Defendant is acting as a "consulting expert" for Plaintiff Folweiler Chiropractic, PS ("Folweiler") in a putative class action lawsuit against FAIR Health entitled, *Folweiler Chiropractic, PS v. FAIR Health, Inc.*, No, 15-2-13107-9 SEA, pending in the Superior Court of the State of Washington, King County (the "*Folweiler* Action"). *See* Swift Aff., ¶ 25 and Exhibit E thereto; Complaint, ¶ 33.

As set forth in detail in the accompanying Complaint and the Swift Affidavit, the crux of Plaintiff's claims in the *Folweiler* Action concern the integrity of FAIR Health's database and methodologies, subject matter that Defendant is intimately familiar with and has extensive knowledge of based upon his extensive work as a "special expert" and consultant for FAIR Health at the time of its creation. *See* Swift Aff., ¶¶ 19-22 and Exhibit C thereto; Complaint, ¶¶ 27-30 and Exhibit A thereto.

1

As set forth below, the grant of injunctive relief is contemplated and explicitly provided for in the underlying Confidentiality Agreement at issue, and is necessary to preserve the status *quo* while FAIR Health pursues its claims against Defendant in this action.  Specifically, Section 7 of the Confidentiality Agreement, which is entitled "REMEDIES," provides as follows:

> Recipient [Foreman] agrees that, due to the unique nature of the Proprietary Information, the unauthorized disclosure or use of the Proprietary Information will cause irreparable harm and significant injury to Discloser [FAIR Health], the extent of which will be difficult to ascertain and for which there will be no adequate remedy at law. Accordingly, ***Recipient [Foreman] agrees that Discloser [FAIR Health]***, in addition to any other remedies, ***shall have the right to an immediate injunction and other equitable relief enjoining any breach or threatened breach of this Agreement***, without the necessity of posting any bond or other security.

*See* Complaint, ¶¶ 41 and 47 and Exhibit A thereto; Swift Aff., ¶ 16 and Exhibit A thereto (emphasis added).

Moreover, Defendant shall suffer no prejudice by the grant of injunctive relief as he will be merely be required to do that which he has already agreed to do under his agreement with FAIR Health.

As set forth below, Plaintiff FAIR Health also satisfies the other two requirements necessary for the grant of injunctive relief,  a likelihood of success on the merits and a balance of the equities in its favor.

Simply put, Defendant's betrayal of his contractual obligation to maintain FAIR Health's Proprietary Information in "strict confidence" is plain and mandates the grant of injunctive relief in order to prevent further irreparable harm to FAIR Health and to maintain the status *quo* pending the adjudication of FAIR Health's underlying claims.

Defendant Foreman has been retained as a "consulting expert" by Plaintiff Folweiler in the *Folweiler* Action.  But Defendant Foreman was engaged by Plaintiff Folweiler for one

2

reason, and one reason alone, his intimate knowledge of FAIR Health, its Proprietary Information, including its methodologies, based upon his extensive prior work for FAIR Health. Indeed, Plaintiff's objective is clear – to utilize and exploit Defendant Foreman's knowledge of FAIR Health to attack the integrity of FAIR Health's database and products.

But the Confidentiality Agreement addresses precisely this situation and expressly requires Defendant to hold FAIR Health's Proprietary Information "in strict confidence" and prohibits him from "us[ing] any Proprietary Information for the benefit of [yourself] or any third party or for any purpose other than" Defendant's work for FAIR Health, Syracuse University, and the New York State Attorney General. *See* Swift Aff., ¶ 36 and Exhibit A thereto.

Likewise, Section 2 of the Confidentiality Agreement provides that Defendant Foreman "shall not testify in any judicial, arbitration, administrative, legislative or other legal, regulatory or governmental action or proceeding using Proprietary Information without first notifying FAIR Health and obtaining FAIR Health's prior written consent." *See* Swift Aff., ¶ 37 and Exhibit A thereto.

Accordingly, by this motion, FAIR Health seeks a Temporary Restraining Order, Expedited Discovery and a Preliminary Injunction against Defendant Foreman, with the following specific, affirmative injunctive relief as follows:

    i.    enjoining and restraining Defendant from possessing, retaining and/or making use, in any manner whatsoever, of any Proprietary Information (as that term is defined in the underlying Confidentiality Agreement at issue in this action) of Plaintiff FAIR Health, and/or any other confidential information, data or records (regardless of the form in which such information is maintained) belonging to Plaintiff FAIR Health and/or its existing customers;

    ii.    enjoining and restraining Defendant from: (i) disclosing, providing, communicating or otherwise furnishing any Proprietary Information to

3

Plaintiff Folweiler and/or its counsel, David Breskin, Esq., and (ii) assisting, testifying, providing services and/or otherwise acting as a "consulting expert" in the *Folweiler* Action;

iii.    enjoining and restraining Defendant from disclosing, providing, communicating or otherwise furnishing any Proprietary Information to any other party and/or otherwise acting as a consultant to, or retained expert on behalf of, any party, participating or testifying in any civil, judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental proceeding against FAIR Health and/or challenging FAIR Health data, or the use of it; and

iv.    ordering expedited discovery of Defendant Foreman prior to the determination of the permanent injunction motion, including an examination before trial under oath and request for production of documents.

*See* Order to Show Cause, pp. 2-3.

FAIR Health's request for preliminary relief is consistent with and based upon the underlying Confidentiality Agreement at issue executed by Defendant Foreman which expressly provides for the grant of "***an immediate injunction and other equitable relief enjoining any breach or threatened breach of this Agreement***" *See* Complaint, ¶¶ 41 and 47 and Exhibit A thereto; Swift Aff., ¶ 16 and Exhibit A thereto.

Significantly, the Confidentiality Agreement at issue does not contain any non-compete provisions and does not otherwise prohibit Defendant Foreman from pursuing his livelihood, nor is FAIR Health seeking any injunctive relief which would otherwise prevent Defendant Foreman from doing so with the narrow, tailored exception of prohibiting any further work by Defendant for Breskin in the *Folweiler* Action and/or any other actions or matters against FAIR Health directly or challenging FAIR Health's data. *See* Order to Show Cause.

However, the Confidentiality Agreement at issue specifically requires Defendant to "hold all Proprietary Information in strict confidence" and "not disclose any Proprietary Information to

4

any third-party." *See* Complaint, ¶ 23 and Exhibit A thereto; Swift Aff., ¶ 36and Exhibit A thereto.

Thus, FAIR Health simply seeks compliance with and enforcement of the Confidentiality Agreement and is entitled to specific, affirmative injunctive relief against Defendant based upon his clear violation of the Agreement in acting as a "consulting expert" against FAIR Health in the *Folweiler* Action.

## II.
## FACTS

In the interests of judicial economy, the relevant facts in support of this Motion are set forth in the accompanying Complaint and the Affidavit of Thomas F. Swift, Esq. filed simultaneously herewith.

## III.
## ARGUMENT

## THIS COURT SHOULD GRANT IMMEDIATE INJUNCTIVE RELIEF AGAINST DEFENDANT BASED UPON THE CONFIDENTIALITY AGREEMENT AND CPLR 6301

### A.    The Standards for the Grant of Injunctive Relief Under CPLR § 6301

Under CPLR § 6301, this Court is specifically empowered to grant injunctive relief to enjoin former employees or consultants such as Defendant Foreman from engaging in unlawful business activities in violation of their confidentiality agreements and their common law duties. *See e.g.*, *DoubleClick, Inc. v. Henderson*, 1997 N.Y. Misc. LEXIS 577 (November 5, 1997) (granting preliminary injunction against former employees who misappropriated proprietary information in an effort to divert employer's business). Specifically, CPLR § 6301 authorizes this Court, in its discretion, to grant an injunction enjoining a particular act which would otherwise tend to "render the judgment ineffectual," or would "produce injury" to the movant. CPLR 6301 provides as follows:

5

> A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or is procuring or suffering to be done, an act in violation of the plaintiffs rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action in which the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of an action, would produce injury to the plaintiff. A temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss, or damage will result unless the defendant is restrained before the hearing can be had.

In addition, CPLR § 6301 authorizes the Court to enter a temporary restraining order to preserve the status *quo* until the parties can be heard on an injunction motion. *Id.*

It is well established that a movant must satisfy three factors to obtain injunctive relief: (i) a showing of imminent or irreparable damage, without an adequate remedy at law; (ii) a balance of equities which favors the grant of injunctive relief; and (iii) a likelihood of success on the merits. *See DoubleClick, Inc.*, 1997 N.Y. Misc. LEXIS 577, *7; *Preferred Equities Corp. v. Ziegelman*, 155 A.D.2d 424, 547 N.Y.S.2d 355, 336 (2d Dep't 1989); *Blake v. Biscardi*, 52 A.D.2d 834, 382 N.Y.S.2d 831, 832 (2d Dep't 1976).

As set forth in detail below and in the Swift Affidavit filed simultaneously herewith, FAIR Health has satisfied each of the three requisite factors necessary for the grant of injunctive relief under CPLR § 6301. Accordingly, FAIR Health respectfully requests that this Court issue a Temporary Restraining Order, Expedited Discovery and a Preliminary Injunction to prevent irreparable damage to FAIR Health and preserve the status *quo* during the pendency of this action.

6

**B.     Defendant Foreman Has a Common Law Duty and a Contractual Duty
Not to Use or Disclose FAIR Health's Confidential Information**

Numerous New York courts have recognized the common law duty "that an agent has a

duty 'not to use confidential knowledge acquired in his employment in competition with his

principal.'" *ABKCO Music Inc. v. Harrisongs Music, Ltd.,* 722 F.2d 988, 994 (2d

Cir.1983) (quoting *Byrne v. Barrett,* 268 N.Y. 199, 206, 197 N.E. 217, 218 (1935)). Such a duty

"exists as well after the employment is terminated as during its continuance." *Id.* (internal

quotation marks omitted); *accord L.M. Rabinowitz & Co. v. Dasher,* 82 N.Y.S.2d 431, 435

(Sup.Ct.1948) ("It is implied in every contract of employment that the employee will hold sacred

any trade secrets or other confidential information which he acquires in the course of his

employment. This is a duty that the employee assumes not only during his employment but after

its termination.") (internal citations omitted).

In addition to his common law duty not to disclose FAIR Health's confidential and

proprietary information, Defendant Foreman also had an express contractual duty not to disclose

FAIR Health's confidential and proprietary information under the express terms of the

Confidentiality Agreement.  Specifically, the Confidentiality Agreement requires Defendant to

hold FAIR Health's Proprietary Information "in strict confidence" and prohibits him from

"us[ing] any Proprietary Information for the benefit of [himself] or any third party or for any

purpose other than" Defendant's work for FAIR Health, Syracuse University, and the New York

State Attorney General.   *See* Swift Aff., ¶ 36 and Exhibit A thereto.  Indeed, the non-disclosure

provisions of the Confidentiality Agreement are clear and unambiguous.

**C.     The Confidentiality Agreement is a Valid and Enforceable Agreement**

New York law recognizes the enforceability of confidentiality covenants in agreements,

so long as they are necessary to prevent disclosure of proprietary or confidential information, to

7

protect the good will of the employer's business or when the employer is exposed to special harm because of the unique nature of the employee's services. _Kelly v. Evolution Markets, Inc.,_ 626 F. Supp. 2d 364, 371-72 (S.D.N.Y. 2009); _USI Ins. Services LLC v. Miner_, 10 CIV. 8162 LAP, 2011 WL 2848139 (S.D.N.Y. July 7, 2011); _Healthworld Corp. v. Gottlieb_, 12 A.D.3d 278, 279, 786 N.Y.S.2d 8, 9 (1st Dep't 2004); _Ikon Office Solutions, Inc. v. Usherwood Office Technology, Inc.,_ 2008 WL 5206291, *19 (N.Y. Sup. 2008); _Awwad v. Capital Region Otolaryngology Head & Neck Group, LLP_, 2007 WL 4623509 (N.Y. Sup. 2007); _Spinal Dimensions v. Chepenuk,_ 2007 WL 2296503, *12 (N.Y. Sup. 2007).

Likewise, an employer has a protectable interest in its proprietary information, confidential material, and good will. _See DoubleClick, Inc.,_ 1997 N.Y. Misc. LEXIS 577, *9-10; _BDO Seidman v. Hirshberg_, 93 N.Y.2d 382, 392 (1999); _Data Systems Computer Centre v. Tempesta,_ 171 A.D.2d 724, 725, 566 N.Y.S.2d 955, 957 (2d Dep't 1991); _Ikon Office Solutions, Inc. v. Usherwood Office Technology, Inc.,_ 2008 WL 5206291, ** 12-13 (N.Y. Sup. 2008).

Indeed, New York Courts routinely grant temporary restraining orders to enforce non-disclosure clauses in confidentiality agreements. _See R.I.E Corp. v. Ferraro Foods, Inc.,_ 2015 WL 1456178 (N.D.N.Y. 2015); Delta Ent. Corp. v. Cohen, 93 A.D.3d 411 (1st Dep't 2012); _Invesco Institutional (N.A.), Inc. v. Deutsche Investment Mgmt. Americas, Inc._, 74 A.D.3d 696 (1st Dep't 2010); _People's United Ins. Agency, Inc. v. Bentivegna_, 2013 WL 9794555 (N.Y. Sup. 2013); _Penton Learning Systems,, LLC v. Defense Strategies Institute Group_, 2012 WL 11980354 (N.Y. Sup. 2012); _Medical Mgmt. Serv., Inc. v. Mascellino_, 201 WL 10897336 (N.Y. Sup. 2010).

Confidentiality agreements to maintain confidential information of the employer are subject to specific enforcement to the extent that they are "necessary to protect the employer's

8

legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee.'" *Ashland Mgmt. Inc. v. Altair Investments NA, LLC*, 59 A.D.3d 97, 102, 869 N.Y.S.2d 465, 470 (2008) *aff'd as modified*, 14 N.Y.3d 774, 925 N.E.2d 581 (2010).

With respect to covenants aimed at protecting against misappropriation of an employer's proprietary or confidential information, "courts ... recognize the legitimate interest an employer has in safeguarding that which has made his business successful and to protect himself against deliberate surreptitious commercial piracy. Thus, restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of proprietary information or confidential customer information." *Id.*

Here, the covenant at issue, the non-disclosure provision of the Confidentiality Agreement is clearly "necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee."

Likewise, the Proprietary Information, as broadly defined in the Confidentiality Agreement, qualifies as a protectable interest for purposes of the specific enforcement of the Confidentiality Agreement and its non-disclosure provision. Accordingly, by this motion, FAIR Health seeks specific enforcement of the Confidentiality Agreement to protect its legitimate business interests, namely, its Proprietary Information, its methodologies, goodwill and the integrity of its database, from assault by Defendant Foreman who has specifically agreed to keep such information strictly confidential and not to disclose it to any third-party or otherwise use it against FAIR Health.    In short, Defendant Foreman should be held to the terms of the Confidentiality Agreement, which he specifically accepted and agreed to.

9

**D.** **The Court Should Issue Injunctive Relief Because FAIR Health Is Suffering Immediate And Irreparable Harm Based On Defendant's Wrongful Conduct**

In the ultimate display of "chutzpah" and in direct violation of his Confidentiality Agreement with FAIR Health, Defendant Foreman misappropriated FAIR Health's Proprietary Information and has disclosed it without permission, for his own financial benefit, to actively work against FAIR Health as a "consulting expert" for Plaintiff Folweiler in the Folweiler Action. *See* Swift Aff., ¶ 25 and Exhibit E thereto; Complaint, ¶ 33. Accordingly, FAIR Health is suffering and continues to suffer irreparable harm that cannot be adequately quantified.

As an initial matter, it is important to recognize that Defendant Foreman has already acknowledged that FAIR Health has suffered irreparable harm and has agreed to the grant of injunctive relief under the express terms of the Confidentiality Agreement.

> Recipient [Foreman] agrees that, due to the unique nature of the Proprietary Information, the unauthorized disclosure or use of the Proprietary Information will cause irreparable harm and significant injury to Discloser [FAIR Health], the extent of which will be difficult to ascertain and for which there will be no adequate remedy at law. Accordingly, ***Recipient [Foreman] agrees that Discloser [FAIR Health]***, in addition to any other remedies, ***shall have the right to an immediate injunction and other equitable relief enjoining any breach or threatened breach of this Agreement***, without the necessity of posting any bond or other security.

*See* Complaint, ¶¶ 41 and 47 and Exhibit A thereto; Swift Aff., ¶ 16 and Exhibit A thereto (emphasis added).

Thus, FAIR Health has satisfied the first prong of the test to determine whether the grant of injunctive relief is proper.

In addition to the express terms of the Confidentiality Agreement at issue, FAIR Health has also demonstrated that Defendant Foreman has caused it irreparable harm based upon his participation as a "consulting expert" for Plaintiff Folweiler for which FAIR Health has no

10

adequate remedy at law.   FAIR Health cannot readily ascertain or quantify the damages that it

has suffered and will continue to suffer based upon Defendant's wrongful conduct and breach of

the Confidentiality Agreement.

**E.      The Equities in this Case Weigh Squarely in Favor of FAIR Health
         <u>And Issuing Injunctive Relief in Order to Preserve the *Status Quo*</u>**

It is well settled under New York law, that equity does not favor an agent that breaches

the duty of confidentiality owed to its principal.   *See DoubleClick*, 1997 N.Y. Misc. LEXIS

577, *7.  Thus, as an initial matter, the balance of equities favors FAIR Health.

In assessing the equities with respect to the grant of injunctive relief, the Court must

determine whether the harm to be sustained by the movant outweighs the inconvenience to the

adverse party.   *See Metropolitan Package Store Ass'n v. Koch*, 80 A.D.2d 940, 941, 437

N.Y.S.2d 760, 761 (3rd Dep't 1981); *Edgeworth Food Corp. v. Stephenson*, 53 A.D.2d 588, 385

N.Y.S.2d 64 (1st Dep't 1976); *Ikon Office Solutions, Inc. v. Usherwood Office Technology, Inc.*,

2008 WL 5206291, *18 (N.Y. Sup., Albany Cty. 2008).

New York courts have repeatedly ruled that a preliminary injunction should be issued to

preserve the *status quo,* even where factual issues are in sharp dispute, if the injunction does not

produce significant harm to the restrained party. *See Preferred Equities Corp. v. Ziegelman*, 155

A.D.2d 424, 547 N.Y.S.2d 355, 356 (2nd Dep't 1989) ("in some situations a preliminary

injunction may be issued to preserve the status quo, despite the existence of factual disputes,

because no injury will result to the enjoined party . . ."); *Mr. Natural, Inc., v. Unadulterated

Food Products, Inc.*, 152 A.D.2d 729, 544 N.Y.S.2d 182, 183 (2d Dep't 1989) ("the existence of

a factual dispute will not bar the granting of a preliminary injunction if one is necessary to

preserve the status quo and the party to be enjoined will suffer no great hardship as a result of its

issuance"); *Burmax Co., Inc. v. B & S Industries, Inc.*, 135 A.D.2d 599, 522 N.Y.S.2d 177, 179

11

(2d Dep't 1987) ("since the Defendant will suffer no great hardship as a result of the issuance of the preliminary injunction, which is necessary to preserve the status quo, the alleged factual dispute should not bar the remedy"). _See also_, _City Store Gates Mfg. Corp. v. United Steel Products, Inc._, 79 A.D.2d 671, 433 N.Y.S.2d 876, 877 (2d Dep't 1980); _Blake v. Biscardi_, 52 A.D.2d 834, 382 N.Y.S.2d 831, 832-33 (2d Dep't 1976) (court issued a preliminary injunction, even though facts were disputed, to maintain the _status quo_ and to restrain Defendant from conveying real properties, because conveyance might render any judgment for plaintiff ineffectual).

Indeed, under CPLR 6312(c), "the existence of an issue of fact on a motion for a preliminary injunction is not, standing alone, a sufficient basis for denying a preliminary injunction." _DoubleClick_, 1997 N.Y. Misc. LEXIS 577, *7.

CPLR 6312(c) provides as follows:

> Provided that the elements required for the issuance of a preliminary injunction are demonstrated in the plaintiff's papers, the presentation by the defendant of evidence sufficient to raise an issue of fact as to any of such elements shall not in itself be grounds for denial of the motion. In such event, the court shall make a determination by hearing or otherwise whether each of the elements required for issuance of a preliminary injunction exists.

In this instance, a preliminary injunction will not work any prejudice or significant hardship upon Defendant. Neither the temporary restraining order nor the injunction that FAIR Health seeks would prevent Defendant from pursuing his livelihood either as a Professor of Healthcare Administration, or as consultant or expert in the area of healthcare administration.

Rather, the injunctive relief sought would merely prohibit Defendant Foreman, consistent with the terms of the Confidentiality Agreement, from using FAIR Health's

12

Proprietary Information and assisting and participating in the prosecution of a civil action against FAIR Health as "consulting expert."

Thus, the grant of injunctive relief would simply prevent Defendant from doing something which he has already agreed not to do, namely, use FAIR Health's Proprietary Information and/or knowledge that he gained while performing services for FAIR Health against it.

Defendant will suffer no harm or prejudice from the grant of a preliminary injunction. Indeed, Defendant cannot possibly be harmed by any of these proposed restraints as he never had any right to use FAIR Health's Proprietary Information, or actively work against FAIR Health.

Rather, Defendant will be free to pursue any other opportunities that he wishes so long a as those opportunities do not involve attacking FAIR Health or its data. Thus, under any reasonable interpretation, the equities fall squarely in favor of FAIR Health and warrant the grant of injunctive relief against Defendant Foreman.

F.    **FAIR Health is Likely to Succeed on the Merits of its Claims**

On a motion for preliminary injunction, the proper standard for demonstrating the likelihood of success is whether the movant has made a *prima facie* showing of his right to relief at a later hearing on the merits. *Gambar Enterprises, Inc. v. Kelly Services. Inc.,* 69 A.D.2d 297, 418 N.Y.S.2d 818, 824 (4th Dep't 1979) (order granting preliminary injunction upheld because plaintiff set forth facts supporting the claim, as well as harm that would be sustained in the absence of injunctive relief); *Ikon Office Solutions, Inc. v. Usherwood Office Technology, Inc.,* 2008 WL 5206291, **15-16 (N.Y. Sup. 2008); *Awwad v. Capital Region Otolaryngology Head*

13

*& Neck Group, LLP*, 2007 WL 4623509, * 8 (N.Y. Sup. 2007); *Spinal Dimensions v. Chepenuk*, 2007 WL 2296503, ** 11-12 (N.Y. Sup. 2007).

This is the governing standard for "likelihood of success" because the merits of the action are not finally determined on a preliminary injunction motion. Indeed, the purpose of requiring a *prima facie* showing, like the purpose of an injunction, is to preserve the *status quo* "until a decision is reached on the merits." *See Tucker v. Toia*, 54 A.D.2d 322, 325, 388 N.Y.S.2d 475, 478 (4th Dep't 1976).

FAIR Health has made the following *prima facie* showings:

(a)    In consideration for his hire and employment by FAIR Health, Defendant Foreman executed a valid, enforceable Confidentiality Agreement which governs his relationship for FAIR Health;

(b)    Defendant Foreman has been identified in discovery produced by Plaintiff Folweiler as a "consulting expert" in litigation against FAIR Health and as the primary source of allegations in Plaintiff's Complaint in the Folweiler Action; and

(c)    Defendant Foreman violated the Confidentiality Agreement by, among other things, using and disclosing FAIR Health's Proprietary Information to Breskin and Plaintiff Folweiler in his capacity as a "consulting expert."

These *prima facie* showings demonstrate a likelihood of success on the merits with respect to all of FAIR Health's claims against Defendant and satisfy the third prong of the test to determine whether injunctive relief is proper.

The issuance of a temporary restraining order, expedited discovery and a preliminary injunction, are both necessary and warranted under the circumstances. FAIR Health has made a clear showing that Defendant has caused and will continue to cause irreparable harm to FAIR Health, that the equities in this case favor FAIR Health and that FAIR Health is likely to prevail

14

on the merits.    Accordingly, the Court should issue a temporary restraining order and a preliminary injunction against Defendant Foreman.

## G.    No Bond Should Be Required For The Grant Of A Temporary Restraining Order or a Preliminary Injunction

The Court should not require an undertaking in connection with the issuance of injunctive relief against Defendant because the Confidentiality Agreement specifically provides for the waiver of a bond.   Section 7 of the Confidentiality Agreement, entitled "REMEDIES", provides as follows:

> Accordingly, Recipient [Defendant] agrees that Discloser [FAIR Health], in addition to any other remedies, shall have the right to an immediate injunction and other equitable relief enjoining any breach or threatened breach of this Agreement, *without the necessity of posting any bond or other security*.

*See* Complaint, ¶¶ 41 and 47 and Exhibit A thereto; Swift Aff., ¶ 16 and Exhibit A thereto (emphasis added).

Likewise, the grant of injunctive sought by FAIR Health seek will not cause any injury to Defendant. As explained in detail herein, the injunctive relief sought would not prevent or otherwise impair Defendant Foreman from conducting his business activities in the normal course and pursuing his livelihood with the sole exception that he can no longer provide consulting expert services to Breskin or Plaintiff Folweiler against FAIR Health.   Rather, going forward, Defendant would simply be narrowly restrained and enjoined from disclosing FAIR Health's Proprietary Information and otherwise acting against FAIR Health . Thus, the grant of the injunctive relief requested would not otherwise harm Defendant so as to necessitate a bond.

15

**H.**    **FAIR Health is Entitled to Expedited Discovery of from Defendant Foreman**

By its application, Plaintiff FAIR Health seeks expedited discovery in the form of a deposition of Defendant Foreman, as well production of all relevant documents relating to its underlying claims for breach of contract, unfair competition and misappropriation of trade secrets and unjust enrichment.

Expedited discovery and the reversal of priority is warranted here in light of Defendant Foreman's unique possession of the information necessary to determine the extent of his unlawful conduct. *See Bel Geddes v. Zeiderman,* 228 A.D.2d 393, 644 N.Y.S.2d 729 (1st Dep't 1996) (plaintiff granted priority for breach of fiduciary duty claim, because if true, details would be known only to defendant). *See also, Sylmark Holdings Ltd. V. Silicone Zone Int'l Ltd.,* 783 N.Y.S.2d 758, 774 (N.Y. Sup. Ct. 2004) (plaintiff's request for expedited discovery and the reversal of normal priority in discovery to explore defendants' misfeasance and prevent any further dissemination of trade secrets granted); *DoubleClick, Inc. v. Henderson,* 1997 WL 731413, *8 (court ordered expedited discovery in misappropriation of trade secrets case).

Specifically, only Defendant Foreman can provide relevant discovery regarding his communications with Breskin and Plaintiff Folweiler regarding his role and participation as a "consulting expert" in the *Folweiler* Action.  Accordingly, the Court should grant FAIR Health's request for expedited discovery in advance of the preliminary injunction hearing.

## IV.
## CONCLUSION

For all of the foregoing reasons, FAIR Health respectfully requests that the Court grant, in all respects, its motion for an Order, pursuant to CPLR 6301, *et seq.,* granting a Temporary Restraining Order, Expedited Discovery and a Preliminary Injunction and all such other and further relief as the Court deems just and proper.

16

Respectfully submitted,

Dated: New York, New York
      March 22, 2016

**MORAN • KARAMOUZIS LLP**

By:_____
    Siobhan E. Moran
    Andrew P. Karamouzis

265 Sunrise Highway, Suite 61
Rockville Centre, New York 11570
(516) 678-6660
(516) 678-6661 (Facsimile)
smoran@mka-law.com
akaramouzis@mka-law.com

**Attorneys for Plaintiff**
FAIR Health, Inc.

17

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840 (7/2012)

**New York Supreme COURT, COUNTY OF New York**

**Index No: 651473/2016          Date Index Issued: 03/21/2016**

**CAPTION:** Enter the complete case caption. Do not use et al or et ano. If more space is required, attach a caption rider sheet.

FAIR HEALTH, INC.

**Plaintiff(s)/Petitioner(s)**

-against-

STEPHEN FOREMAN

**Defendant(s)/Respondent(s)**

| For Court Clerk Use Only: |
|---|
| IAS Entry Date |
| |
| Judge Assigned |
| |
| RJI Date |

## NATURE OF ACTION OR PROCEEDING:   Check ONE box only and specify where indicated.

**MATRIMONIAL**

- ☐ Contested

  **NOTE:** For all Matrimonial actions where the parties have children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum**. For Uncontested Matrimonial actions, use RJI form UD-13.

**TORTS**

- ☐ Asbestos
- ☐ Breast Implant
- ☐ Environmental:
- ☐ Medical, Dental, or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability:
- ☐ Other Negligence:
- ☐ Other Professional Malpractice:
- ☐ Other Tort:

**COMMERCIAL**

- ☐ Business Entity (including corporations, partnerships, LLCs, etc.)
- ☒ Contract
- ☐ Insurance (where insurer is a party, except arbitration)
- ☐ UCC (including sales, negotiable instruments)
- ☐ Other Commercial:

  **NOTE:** For Commercial Division assignment requests [22 NYCRR § 202.70(D)], complete and attach the **COMMERCIAL DIV RJI Addendum**.

**REAL PROPERTY:**   How many properties does the application include?

- ☐ Condemnation
- ☐ Mortgage Foreclosure:      ☐ Residential      ☐ Commercial

  Property Address:

  **NOTE:** For Mortgage Foreclosure actions involving a one- to four-family, owner-occupied, residential property, or an owner-occupied condominium, complete and attach the **FORECLOSURE RJI Addendum.**

- ☐ Tax Certiorari - Section:          Block:          Lot:
- ☐ Tax Foreclosure
- ☐ Other Real Property:

**OTHER MATTERS**

- ☐ Certificate of Incorporation/Dissolution      [see **NOTE** under Commercial]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other:

**SPECIAL PROCEEDINGS**

- ☐ CPLR Article 75 (Arbitration)      [see **NOTE** under Commercial]
- ☐ CPLR Article 78 (Body or Officer)
- ☐ Election Law
- ☐ MHL Article 9.60 (Kendra's Law)
- ☐ MHL Article 10 (Sex Offender Confinement-Initial)
- ☐ MHL Article 10 (Sex Offender Confinement-Review)
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene:
- ☐ Other Special Proceeding:

## STATUS OF ACTION OR PROCEEDING:   Answer YES or NO for EVERY question AND enter additional information where indicated.

|  | **YES** | **NO** |  |
|---|---|---|---|
| Has a summons and complaint or summons w/notice been filed? | ☒ | ☐ | If yes, date filed:  03/21/2016 |
| Has a summons and complaint or summons w/notice been served? | ☐ | ☒ | If yes, date served: |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: |

**NATURE OF JUDICIAL INTERVENTION:** *Check ONE box only AND enter additional information where indicated.*

- [ ] Infant's Compromise
- [ ] Note of Issue and/or Certificate of Readiness
- [ ] Notice of Medical, Dental, or Podiatric Malpractice     Date Issue Joined:
- [ ] Notice of Motion     Relief Sought:                           Return Date:
- [ ] Notice of Petition     Relief Sought:                           Return Date:
- [x] Order to Show Cause     Relief Sought:   Injunction/Restraining Order          Return Date:
- [ ] Other Ex Parte Application     Relief Sought:
- [ ] Poor Person Application
- [ ] Request for Preliminary Conference
- [ ] Residential Mortgage Foreclosure Settlement Conference
- [ ] Writ of Habeas Corpus
- [ ] Other:

**RELATED CASES:** List any related actions. For Matrimonial actions, include any related criminal and/or Famiy Court cases. If additional space is required, complete and attach the **RJI Addendum**. If none, leave blank.

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**PARTIES:** For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in space provided. If additional space is required, complete and attach the **RJI Addendum**.

| Un-Rep | Parties: List parties in caption order and indicate party role(s) (e.g., defendant; 3rd-party plaintiff). | Attorneys and/or Unrepresented Litigants: Provide attorney name, firm name, business address, phone number and e-mail address of all attorneys that have appeared in the case. For unrepresented litigants, provide address, phone number and e-mail address. | Issue Joined (Y/N): | Insurance Carrier(s): |
|---|---|---|---|---|
| [ ] | Name: FAIR HEALTH, INC.<br><br>Role(s): Plaintiff/Petitioner | ANDREW KARAMOUZIS, MORAN KARAMOUZIS LLP, 265 SUNRISE HIGHWAY SUITE 61, ROCKVILLE CENTRE, NY 11570, (516) 678-6660, akaramouzis@mka-law.com | NO | |
| [x] | Name: FOREMAN, STEPHEN<br><br>Role(s): Defendant/Respondent | 156 Quarry Lane, Franklin , PA 16323 | NO | |
| [ ] | Name:<br><br>Role(s): | | | |
| [ ] | Name:<br><br>Role(s): | | | |
| [ ] | Name:<br><br>Role(s): | | | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.**

**Dated:**     03/23/2016                          ANDREW P. KARAMOUZIS

                                                         **SIGNATURE**

                2306736                           ANDREW P. KARAMOUZIS

**ATTORNEY REGISTRATION NUMBER**                  **PRINT OR TYPE NAME**

UCS-840C
3/2011

**SUPREME COURT OF THE STATE OF NEW YORK**

**COUNTY OF** New York

_____x

FAIR HEALTH, INC.

Index No:  **651473/2016**

RJI No. (if any)

**Plaintiff(s)/Petitioner(s)**

-against-

STEPHEN FOREMAN

## COMMERCIAL DIVISION

**Request for Judicial Intervention Addendum**

**Defendant(s)/Respondent(s)**
_____x

**COMPLETE WHERE APPLICABLE** [add additional pages if needed]:

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

☒ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g. unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g. sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

☐ Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium units)

☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

☐ Shareholder derivative actions — without consideration of the monetary threshold

☐ Commercial class actions — without consideration of the monetary threshold

☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions

☐ Internal affairs of business organizations

☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

☐ Environmental insurance coverage

☐ Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage)

☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures — without consideration of the monetary threshold

☐ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues — without consideration of the monetary threshold

**Plaintiff/Petitioner's claim for compensatory damages** [exclusive of punitive damages, interest, costs and counsel fees claimed]:
1000000.00

**Plaintiff/Petitioner's claim for equitable or declaratory relief** [brief description]:
TRO, Expedited Discovery and Permanent Injunction

**Defendant/Respondent's counterclaim(s)** [brief description, including claim for monetary relief]:
None

**I REQUEST THAT THIS CASE BE ASSIGNED TO THE COMMERCIAL DIVISION. I CERTIFY THAT THE CASE MEETS THE JURISDICTIONAL REQUIREMENTS OF THE COMMERCIAL DIVISION SET FORTH IN 22 NYCRR § 202.70(a), (b) and (c).**

**Dated:**     03/23/2016

ANDREW P. KARAMOUZIS

**SIGNATURE**

ANDREW P. KARAMOUZIS

**PRINT OR TYPE NAME**

At Part _39_ of the Supreme Court of
the State of New York, held in and
for the County of New York, at the
New York Courthouse, 60 Centre
Street, Room _206_ New York, New
York 10007, on the _24th_ day of
March 2016

Ex Parte Application? (Yes)  No

P R E S E N T :

**HON. SALIANN SCARPULLA**  Notice Provided? (Yes)  No

Hon. _____
Justice.

MOTION SEQUENCE # _001_

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

-------------------------------------------------x

**FAIR HEALTH, INC.,**                              Index No. 651473/2016

                    Plaintiff,

          - against -

**STEPHEN FOREMAN,**                    <u>ORDER TO SHOW CAUSE</u>

                    Defendant.

-------------------------------------------------x

Upon reading and filing of the accompanying Affidavit of Thomas F. Swift, Esq., sworn

to March 21, 2016, the exhibits attached thereto, the accompanying Affirmation of Emergency of

Andrew P. Karamouzis, Esq., sworn to March 22, 2016, the exhibits attached thereto, and

Plaintiff's Memorandum of Law in Support of its Motion for a Temporary Restraining Order and

Preliminary Injunction, dated March 22, 2016, and upon the prior pleadings and proceedings in

this action; and sufficient cause appearing therefor,

**LET** Defendant Stephen Foreman ("Foreman" or "Defendant") show cause before the

Hon. _Saliann Scarpulla_ one of the Justices of the Supreme Court, in Part _39_ thereof, at the

New York County Courthouse, Room _206_ 60 Centre Street, New York, New York 10007, on

the 5th day of April, 2016 at __2:15 pm__ o'clock a.m./p.m., or as soon thereafter as counsel

may be heard, why an Order should not be issued and entered pursuant to CPLR 6301, _et seq._:

a. Enjoining and restraining Defendant, his agents, representatives, employees, and all others acting in concert with him, and specifically including David Breskin, Esq. and the law firm of Breskin, Johnson & Townsend, and its attorneys and employees (collectively, "Breskin"), during the pendency of this action, from possessing, retaining and/or making use, in any manner whatsoever, of any Proprietary Information (as that term is defined in the underlying Confidentiality Agreement at issue in this action) of Plaintiff FAIR Health, Inc. ("FAIR Health"), and/or any other confidential information, data or records (regardless of the form in which such information is maintained) belonging to Plaintiff FAIR Health and/or its existing customers;

b. Enjoining and restraining Defendant, during the pendency of this action, from (i) disclosing, providing, communicating or otherwise furnishing any Proprietary Information to Plaintiff Folweiler Chiropractic, PS and/or its counsel, Breskin, and (ii) assisting, testifying, providing services and/or otherwise acting as a "consulting expert" in the action entitled _Folweiler Chiropractic, PS vs. FAIR Health, Inc.,_ pending in the Superior Court of Washington (King County), Docket No. 15-2-13107-9 SE;

c. Enjoining and restraining Defendant, during the pendency of this action, from disclosing, providing, communicating or otherwise furnishing any Proprietary Information to any other party and/or otherwise acting as a consultant to, or retained expert on behalf of, any party, participating or testifying in: (i) any civil, judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental proceeding against FAIR Health directly, or (ii) in any civil, judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental proceeding challenging FAIR Health data, or the use of it; and

d. Awarding such other and further relief as this Court deems just and proper.

and upon the foregoing, it is hereby

**ORDERED** that, pending the hearing and determination of this motion of this order to show cause, Defendant, his

agents, representatives, employees, and all others acting in concert with him, and specifically

HON. SALIANN SCARPULLA

2

including Breskin, during the pendency of this action, are hereby enjoined and restrained from possessing, retaining and/or making use, in any manner whatsoever, of any Proprietary Information (as that term is defined in the underlying Confidentiality Agreement at issue in this action) of Plaintiff FAIR Health, Inc., and/or any other confidential information, data or records (regardless of the form in which such information is maintained) belonging to Plaintiff FAIR Health and/or its existing customers;

**ORDERED** that, pending the hearing ~~and determination of this motion~~ *of this order to show cause*, Defendant, his agents, representatives, employees, and all others acting in concert with him, are hereby enjoined and restrained from: (i) disclosing, providing, communicating or otherwise furnishing any Proprietary Information to Plaintiff Folweiler Chiropratic, PS and/or its counsel, Breskin, and (ii) ~~assisting, testifying, providing services and/or otherwise acting as a "consulting expert" in the action entitled *Folweiler Chiropractic, PS vs. FAIR Health, Inc.*, pending in the Superior Court of Washington (King County), Docket No. 15-2-13107-9 SE;~~

**ORDERED** that, pending the hearing ~~and determination of this motion~~ *of this order to show cause*, Defendant, his agents, representatives, employees, and all others acting in concert with him, are hereby enjoined and restrained from disclosing, providing, communicating or otherwise furnishing any Proprietary Information to any other party ~~and/or otherwise acting as a consultant to, or retained expert on behalf of, any party, participating or testifying in: (i) any civil, judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental proceeding against FAIR Health directly, or (ii) in any civil, judicial, arbitration, administrative, legislative or other legal, regulatory, or governmental proceeding challenging FAIR Health data, or the use~~ of it;

JSC

HON. SALIANN SCARPULLA

3

**ORDERED** that, ~~Plaintiff FAIR Health shall be entitled to expedited discovery of Defendant Foreman prior to the determination of the permanent injunction motion, including an examination before trial under oath and request for production of documents.  Any~~ request for production shall be served upon ~~Defendant Foreman on or before~~ _____, 2016, with ~~Defendant's responses due on or before~~ _____, 2016.  The examination ~~before trial of Defendant Foreman shall be held on or before~~ _____, 2016 at the offices of ~~Plaintiff FAIR Health's counsel.~~

Sufficient cause being alleged, let service of a copy of this Order and the papers on which it is based upon: (i) Stephen Foreman, 156 Quarry Lane, Franklin, Pennsylvania 16323, by overnight courier delivery and/or e-mail and/or personal delivery on or before the ____th day of March  2016, and (ii) David Breskin, Esq., located at 1000 Second Avenue, Suite 3670, Seattle, Washington 98104 by overnight courier delivery and/or e-mail and/or personal delivery, and (iii) the firm of Breskin, Johnson & Townsend located at 1000 Second Avenue, Suite 3670, Seattle, Washington 98104, by overnight courier delivery and/or e-mail and/or personal delivery, be deemed good and sufficient, and it is further

**ORDERED** that, opposition papers, if any, shall be filed and served by overnight courier delivery and/or personal delivery on or before the ~~___~~th day of ~~_____~~ 2016, ~~and reply papers shall be filed and served on or before the ____ th day of _____ 2016.~~

*1st    April*

ORAL ARGUMENT
DIRECTED
J.S.C.

HON. SALIANN SCARPULLA

E  N  T  E  R

J.S.C.

HON. SALIANN SCARPULLA

4

Case 1:16-cv-02367-PKC   Document 1-1   Filed 03/30/16   Page 110 of 114

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------x

FAIR HEALTH, INC.,                                        Index No. 651473/2016

Plaintiff,

- against -

STEPHEN FOREMAN,                                          **AFFIRMATION
                                                         OF SERVICE**

Defendant.

--------------------------------------------------------x

     I, ANDREW P. KARAMOUZIS, ESQ. an attorney duly admitted to practice before the Courts of the State of New York, hereby affirm the following under the penalties of perjury:

     1.     I am not a party to this action; I am over 18 years of age and reside in Nassau County, State of New York.

     2.     On March 23, 2016, I caused true and correct copies of the foregoing Order to Show Cause, signed by Hon. Saliann Scarpulla, J.S.C., on March 23, 2016, and the accompanying (i) Affirmation in Emergency of Andrew P. Karamouzis is Support of Order to Show Cause; (ii) Affidavit of Thomas F. Swift in Support of Order to Show Cause; (iii) Memorandum of Law in Support of Order to Show Cause; and (iv) the Summons and Complaint; to be served via United Parcel Service ("U.P.S"), overnight mail by depositing true copies thereof, enclosed in a postage paid wrapper, in an official depository with U.P.S, as follows:

Stephen Foreman
156 Quarry Land
Franklin, Pennsylvania 16323

David Breskin, Esq.
BRESKIN JOHNSON TOWNSEND
1000 Second Street, Suite 3670
Seattle, Washington 98104

BRESKIN JOHNSON TOWNSEND
1000 Second Street, Suite 3670
Seattle, Washington 98104

3.      Attached hereto as Exhibit "A" are true and correct copies of the U.P.S. Proofs of Delivery for each recipient.

Dated:  March 24, 2016
        Rockville Centre, New York

MORAN • KARAMOUZIS LLP

Andrew P. Karamouzis, Esq.

265 Sunrise Highway, Suite 61
Rockville Centre, New York 11570
Attorneys for Plaintiff
FAIR Health, Inc.

Case 1:16-cv-02367-PKC    Document 1-1    Filed 03/30/16    Page 112 of 114

# EXHIBIT A

 **Proof of Delivery**

Close Window

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

| | |
|---|---|
| **Tracking Number:** | 1Z14EY341399805872 |
| **Reference Number(s):** | FOREMAN |
| **Service:** | UPS Next Day Air Saver® |
| **Shipped/Billed On:** | 03/23/2016 |
| **Delivered On:** | 03/24/2016 9:09 A.M. |
| **Delivered To:** | 1000 2ND AVE |
| | 3670 |
| | SEATTLE, WA, US  98104 |
| **Signed By:** | HILL |
| **Left At:** | Reception |

Thank you for giving us this opportunity to serve you.

Sincerely,

UPS

Tracking results provided by UPS:  03/24/2016 1:55 P.M.  ET

Print This Page                        Close Window



**Proof of Delivery**

Close Window

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

| | |
|---|---|
| **Tracking Number:** | 1Z14EY341392293616 |
| **Service:** | UPS Next Day Air Saver® |
| **Shipped/Billed On:** | 03/23/2016 |
| **Delivered On:** | 03/24/2016 6:34 P.M. |
| **Delivered To:** | 156 QUARRY LN |
| | FRANKLIN, PA, US   16323 |
| **Left At:** | Met Customer Man |

Thank you for giving us this opportunity to serve you.

Sincerely,

UPS

Tracking results provided by UPS: 03/28/2016 12:34 P.M. ET

Print This Page                Close Window